640 So.2d 1368 (1994)
STATE of Louisiana Through the DEPARTMENT OF PUBLIC SAFETY and CORRECTIONS, Office of State Police, Riverboat Gaming Division
v.
LOUISIANA RIVERBOAT GAMING COMMISSION and Horseshoe Entertainment, a Louisiana Limited Partnership.
The DEPARTMENT OF PUBLIC SAFTY AND CORRECTIONS, Office of State Police, Riverboat Gaming Division
v.
HORSESHOE ENTERTAINMENT, a Louisiana Limited Partnership.
Larry S. BANKSTON
v.
The LOUISIANA RIVERBOAT GAMING COMMISSION, Louisiana State Police, Division of Riverboat Gaming, Horseshoe Entertainment, a Louisiana Limited Partnership.
The DEPARTMENT OF PUBLIC SAFTY AND CORRECTIONS, Office of State Police, Riverboat Gaming Division
v.
HORSESHOE ENTERTAINMENT, a Louisiana Limited Partnership.
Nos. CA 94 0702 and CA 94 0730-CA 94 0735.
Court of Appeal of Louisiana, First Circuit.
June 17, 1994.
*1369 Stephen A. Quidd, Baton Rouge, James D. Hall, Bossier City, for plaintiffs appellants State of La., et al.
Jennifer Schaye, Baton Rouge, for defendant appellee Louisiana Riverboat Gaming Com'n.
Robert E. Piper, Jr., Shreveport, Steven Mannear, Dan Boudreaux, Richard J. Dodson, Baton Rouge, Graymond F. Martin, *1370 New Orleans, for defendants appellants appellees Horseshoe Entertainment, et al.
Larry S. Bankston, Baton Rouge, for appellant Larry S. Bankston.
Before WATKINS, FOIL, FOGG, PITCHER and PARRO, JJ.
FOIL, Judge.
We are asked to decide in these consolidated appeals whether the Riverboat Gaming Division and a Louisiana citizen may seek judicial review of an adverse decision of the Louisiana Riverboat Gaming Commission. The courts below ruled that the Division and the citizen did not have a right to challenge the Commission's ruling. A second appeal filed by the Division was dismissed pursuant to an exception of res judicata. After a thorough review of the record, we reverse the trial courts' rulings which dismissed the suits on the basis of no right of action and res judicata, but affirm the trial court's action in overruling the exceptions of prescription.

PROCEDURAL BACKGROUND
On March 29, 1993, Horseshoe Entertainment (Horseshoe), a Louisiana Limited Partnership, filed an application with the Office of State Police, Riverboat Gaming Enforcement Division (Division) in Bossier Parish, seeking a license to conduct gaming activities on a riverboat. A hearing was held on the application before the Division. By letter dated November 24, 1993, the Division denied Horseshoe's application. The Division found Horseshoe to be "unsuitable" for the following two reasons: (1) its parent corporation had recently been fined $1,000,000.00 by the Nevada Gaming Board for 946 administrative violations relating to non-compliance with federal and other financial reporting requirements, and (2) key officers in the parent company failed to file tax returns, resulting in delinquencies in excess of $80,000.00.
Horseshoe appealed the denial to the Louisiana Riverboat Gaming Commission (Commission). The record was lodged with the Commission, and Horseshoe, as appellant, and the Division, as appellee, filed briefs with the Commission. A hearing was held before the Commission, during which Horseshoe and the Division argued their respective positions. Following the conclusion of the hearing on January 29, 1994, the Commission voted to reverse the decision of the Division and ordered the Division to issue Horseshoe a license. The Commission members agreed that the decision would be reduced to writing with reasons therefor.
On February 5, 1994, the Superintendent of State Police, Colonel Paul Fontenot, wrote a letter to Mr. Richard Ieyoub, the Attorney General, requesting that the Attorney General's office assist the Division in appealing the Commission's decision. Two days thereafter, Mr. Ieyoub denied the request, stating that because the Division and the Commission are both agencies within the Department of Public Safety and Corrections, the Division could not appeal the Commission's action in granting the license, since such would be tantamount to a state agency suing itself in district court. The Attorney General also pointed out that his staff represented the Commission, and it would therefore be "inappropriate" to have another division of his staff or a special assistant attorney general appointed to litigate against other assistant attorneys general. He concluded that there is a "clear conflict of interest in this instance." Finally, Mr. Ieyoub noted that the Commission carefully considered the record, took briefs and heard oral arguments, and ultimately concluded that the record simply did not support the denial of the license.
The Division appealed the Commission's decision to the 19th Judicial District Court for the Parish of East Baton Rouge, naming the Commission and Horseshoe as defendants. The Division alleged that irregularities in the licensing process invalidated the Commission's decision. It contested the action of the Commission in issuing a certificate of preliminary approval to Horseshoe before the Division had an opportunity to rule on Horseshoe's application. The Division asserted that the Commission's only role in the application process is to hear appeals of decisions by the Division to deny licenses; however, by issuing the preliminary certificate, the Commission usurped the Division's role by attempting to control which applicant *1371 would actually be licensed by the Division to conduct riverboat gaming operations. Further, the Division insisted that the Commission could not make an unbiased decision in the appeal because it had already issued the preliminary certificate. The Division prayed that the court grant the petition for judicial review, reverse the decision of the Commission, and deny the license.
In connection with the petition, the Division filed a request for a stay of the Commission's decision, which was signed by Judge J. Michael McDonald on February 8, 1994. The Attorney General's office filed a motion to dismiss the Division's appeal, asserting that under the Louisiana constitution and applicable statutes, only the Attorney General or his duly authorized designee may represent the State of Louisiana in a court of law. The Attorney General submitted that because the Division's attorney was not authorized by the Attorney General to handle the appeal on behalf of the State, the suit was improperly filed.
On February 9, 1994, Judge McDonald vacated the stay order. The following day, he dismissed the Division's appeal ex proprio motu, ruling that the Division was not a "person" who could seek judicial review of an adverse decision of the Commission. Judge McDonald reasoned that to allow the Division to appeal a decision of its reviewing body would create a ludicrous result, analogous to allowing a district court to appeal an unfavorable decision of an appellate court to the Louisiana Supreme Court. The judge also dismissed the Division's action on the basis that it had been improperly filed because the Attorney General was the proper party to represent the State of Louisiana in the lawsuit, not the Division. Judge McDonald denied the Division's motion for reconsideration and motion for a new trial on February 23, 1994.
On February 22, 1994, the Division sent Horseshoe a letter stating that it had been ordered by the Commission to issue the license to Horseshoe, and that it was issuing a license to Horseshoe subject to seven stipulated conditions in the Commission's decision. Also on that date, two appeals challenging the Commission's action were filed in the 19th Judicial District Court for the Parish of East Baton Rouge. The first was filed by the Division, which named only Horseshoe as a defendant. The second was filed by Senator Larry Bankston, who alleged that as a citizen of Louisiana and a member of the State legislature, he was "adversely affected" by the Commission's decision to reverse the Division's denial of a license to Horseshoe. The cases were allotted to Judge Janice Clark.
The Commission filed a petition of intervention in the proceedings. Horseshoe and the Commission filed exceptions of res judicata, prescription and no right of action directed towards the petition of the Division. Exceptions of no right of action and prescription were also filed against the petition of Senator Bankston.
Preliminarily, Judge Clark denied the Commission's petition of intervention and overruled the exceptions of prescription. She then granted the exception of res judicata, thereby dismissing the Division's appeal. Judge Clark further found that Senator Bankston did not have a right to appeal the Commission's decision, and sustained the exception of no right of action.
Numerous appeals were filed in this court resulting from the rulings of Judge McDonald and Judge Clark. The Division appealed Judge McDonald's ruling that it did not have a right to seek judicial review of the Commission's action. The Division also appealed Judge Clark's dismissal of its second appeal pursuant to the exception of res judicata. Senator Bankston appealed the dismissal of his suit by Judge Clark on the exception of no right of action, and Horseshoe appealed Judge Clark's denial of its prescription exceptions.

MOOTNESS
With respect to the Division's first appeal lodged in this court, challenging Judge McDonald's ruling on its right to seek judicial review, Horseshoe and the Commission filed motions to dismiss the appeal on the basis of mootness. Horseshoe and the Commission assert that because the Division granted Horseshoe's license, it "acquiesced" in the *1372 Commission's order to issue Horseshoe a license, thereby rendering the Division's challenge to the Commission's order moot.
The record reflects that Judge McDonald initially granted the Division's stay order, but vacated that order a day later when he dismissed the Division's suit. On February 17, 1994, the Division received an order from the Commission to issue a license to Horseshoe. The Division complied with this directive, issuing the license to Horseshoe on February 22, 1994. That same day, the Division filed the second appeal of the Commission's decision in the 19th Judicial District Court. The Division appealed the judgment of Judge McDonald devolutively, assigning as error the ruling on the right of the Division to seek judicial review and the action of the judge in vacating the stay.
In support of their argument that the Division "acquiesced" in the Commission's order, Horseshoe and the Commission rely principally on the fact that the Division took a devolutive appeal from Judge McDonald's ruling rather than a suspensive appeal, and did not seek writs from the action of Judge McDonald in lifting the stay. They also point out that the Division issued the license although it was not under court order to do so, did not reserve any rights when it issued the license, and did not condition the granting of the license on the outcome of the legal proceedings as additional evidence of the Division's "acquiescence" in the order.[1]
In order for an acquiescence to remove the right to appeal, there must be an unconditional and voluntary acquiescence by the appellant, with an intent to acquiesce in the challenged action and abandon the appeal. Major v. Louisiana Department of Highways, 327 So.2d 515 (La.App. 1st Cir. 1976). Acquiescence is never presumed, and it must be established by evidence leaving no doubt as to the acquiescence. Id. at 516.
The Division's conduct in granting a gaming license to Horseshoe, under the facts of this case, does not constitute an acquiescence in the order of the Commission. The Division sought reversal of the order through numerous legal channels. It was only after the Division's appeal was dismissed by Judge McDonald, and after the Commission issued a written directive ordering the Division to issue the license, that the Division indeed complied with the Commission's order. The Division appealed Judge McDonald's ruling to this court, and filed a second legal action attacking the order in the district court on the same day it issued the license. The Division issued the license only because it was under direct order by the Commission to do so; the Division's conduct in challenging the order of the Commission through the legal process evidences that the Division never intended to acquiesce in the Commission's order. Therefore, the action of the Division in issuing the license did not render this matter moot. See Roser v. Webb, 542 So.2d 122 (La.App. 1st Cir.1989) (wherein this court ruled that where appellants appealed devolutively, but complied with a writ of quo warranto, such compliance did not constitute acquiescence in the judgment so as to render the appeal moot).

DIVISION'S RIGHT TO APPEAL
We next address the merits of the issue raised in the Division's first appeal, that is, whether Judge McDonald erred in ruling that the Division did not have a right to seek judicial review of the Commission's order.[2] To answer this question, we turn to *1373 the provisions of the Louisiana Riverboat Economic Development and Gaming Control Act, La.R.S. 4:501 et seq. (Riverboat Gaming Act).
The Riverboat Gaming Act was enacted in the 1991 legislative session to provide for a licensing process which authorized the Division to issue up to fifteen licenses to conduct gaming activities on riverboats in Louisiana. La.R.S. 4:525. The legislation created two separate and distinct agencies within the Department of Public Safety and Corrections and vested them with different powers. The Riverboat Gaming Enforcement Division was created by La.R.S. 4:515. The Supervisor of the Division must be a commissioned officer in the State Police. La.R.S. 4:516. The legislation vests the Division with vast regulatory and enforcement powers to carry out the provisions of the Act. The Division has investigatory responsibilities, and is empowered to grant or deny licenses, and to promulgate rules, orders and opinions necessary to carry out the provisions of the Act. La. R.S. 4:517-521; 4:525; 4:530-535.
The Act also created the Riverboat Gaming Commission in the Department of Public Safety and Corrections, comprised of seven members appointed by the governor and confirmed by the Senate. La.R.S. 4:510. The Commission's role as an overseer is evidenced in the Act. The Commission is vested with the power to hear and determine all appeals relating to licensing decisions by the Division. La.R.S. 4:511; 4:547. The Commission may also reject any rule or regulation proposed by the Division. La.R.S. 4:519(B).
La.R.S. 4:548 of the Act sets forth the provision for judicial review of actions of the Commission. It provides:
Any person adversely affected by an action, order, or decision of the commission may appeal to the Nineteenth Judicial District Court in accordance with the provisions of the Administrative Procedure Act, except that notice of appeal shall be given to the commission and petition for appeal shall be filed with the district court within ten days of the action, order, or decision of the commission.
At issue in this appeal is whether the Division is a "person" entitled to appeal the decision of the Commission to award a license to an applicant rejected by the Division after the Division found that applicant to be "unsuitable."
The term "person" is defined in the Riverboat Gaming Act as "an individual, partnership, corporation, unincorporated association, or other legal entity." La.R.S. 4:504(20). The term "Division" is defined in the Act as "the riverboat gaming enforcement division of the gaming enforcement section of the office of state police, public safety services, Department of Public Safety and Corrections." La.R.S. 4:504(6). The Division urges that it is a "legal entity" and is therefore a person entitled to appeal an action of the Commission under La.R.S. 4:548.
The Commission and Horseshoe argue, on the other hand, that the Administrative Procedure Act's definition of person should control the resolution of the issue. Under that act, La.R.S. 49:951(5) defines a "person" as "any individual, partnership, corporation, association, governmental subdivision, or public or private organization of any character other than an agency." Appellees assert that because the Division is an "agency," it is not a "person" under La.R.S. 49:951(5); therefore, it is not a "person" for the purposes of the Riverboat Gaming Act.
It is well settled that the provisions of the Administrative Procedure Act do not supersede specific provisions of other administrative acts, nor do they supersede rights and remedies created under other acts, but rather, create procedures only in those instances where none existed. To the extent that a specific administrative act and the Administrative Procedure Act are inconsistent, the provisions of the specific administrative act apply. Corbello v. Sutton, 446 So.2d 301 (La.1984).
Because the Riverboat Gaming Act and the Administrative Procedure Act contain different *1374 definitions of the term "person," to the extent that they are inconsistent, the definition in the Riverboat Gaming Act controls. The Riverboat Gaming Act does not exclude an "agency" from the definition of "person" as does the Administrative Procedure Act. Rather, it encompasses within its definition any "legal entity." The term "legal entity" is defined in Black Law's Dictionary as "[a]n entity, other than a natural person, who has significant existence in legal contemplation that it can function legally, be sued or sue and make decisions through agents as in the case of corporations." The only question is whether the Division is a "legal entity" and therefore a "person" entitled to appeal an adverse decision of the Commission.
The Division is clearly a "legal entity" as defined above. As will be discussed infra, it has a unique and separate existence and was empowered by the legislature to sue and be sued in the case of declaratory judgment actions. La.R.S. 4:556. The appellees urge, however, that the legislature did not intend to include the Division within the group of "legal entities" which are also "persons" entitled to challenge adverse Commission licensing decisions because it also defined the term "Division" in the act. They also insist the term "other legal entity" is merely a "catch-all" reference for any type of business entity which the statute may have inadvertently omitted from its illustrative list, and was never intended to include the Division as a "person" entitled to invoke the judicial review process.
The definition of "Division" merely sets forth the entire legal name of the Division. This is hardly conclusive proof that the legislature intended to deprive the Division of the right to seek judicial review, and does not end our inquiry. Therefore, we shall examine the Act and the purposes behind it in order to determine whether the legislature intended to give the Division the right to seek judicial review of the Commission's licensing decisions. See Backhus v. Transit Casualty Company, 549 So.2d 283 (La.1989).
Regarding the issue of legislative intent, Horseshoe argues that in enacting the Riverboat Gaming Act, it was the goal of the legislature to make the Division "subservient and subject to the ultimate power of the Commission." It insists that the two agencies are interrelated and perform the same functions. It would be ridiculous, the appellees assert, for an agency to be allowed to appeal the decision of its reviewing agency. Appellees submit that the legislature could not have intended such an absurd result, and therefore, this court is constrained to find that the legislature did not intend to give the Division access to the courts to seek judicial review of Commission licensing decisions.
We disagree. In the Riverboat Gaming Act, the legislature set forth the purposes behind the legislation, one of which is to insure that riverboats which conduct gaming activities in this state shall be "licensed and supervised" and "controlled in such a manner as to protect the public health, safety, morals, good order, and general welfare of our citizens." La.R.S. 4:502(A)(4). To serve this end, the legislature set up the Division, headed by a commissioned officer in the Louisiana State Police, as the chief regulator and enforcer of the provisions of the Act. The Division is vested with the power to grant and deny licenses in addition to other wide regulatory and enforcement powers, and is clearly an entity separate and distinct from the Commission. The Commission is vested with only an oversight role in the licensing process, and may reverse the decision of the Division to deny a license only if the decision is clearly contrary to the facts in the record, the provisions of the Act or the Division's own rules or regulations. La.R.S. 4:547. In legislative discussions on the proposed law, one of its chief sponsors stated that the State Police would "run this thing," while the Commission would have an oversight function.
There can be little doubt that this scheme was created by the legislature not only to protect Louisiana citizens from the ills associated with the gambling industry, but also to foster public confidence in the licensing application process. Denying the Division a right to obtain an independent judicial review of the Commission's action in awarding a license to an applicant the Division deemed "unsuitable" would undermine public confidence in the licensing process.
*1375 Further, the legislature specifically authorized the Division to bring an action in the district court for a declaratory judgment to challenge any provision of the Act or any rule or regulation adopted by the Commission. La.R.S. 4:556. The Act also states that if an action is brought by a "person other than the Division," the Division must be made a party to the action. It would be inconsistent for the legislature to bar the Division from challenging Commission licensing decisions, when the Division can challenge the Commission's rules and regulations by bringing an action for a declaratory judgment. Cf. La.R.S. 49:963 pertaining to judicial review of the validity or applicability of agency rules by an action for declaratory judgment under the Administrative Procedure Act.
Additionally, the unique posture accorded the Division in the licensing scheme was echoed in the administrative proceedings under review. The Division submitted a brief to the Commission, argued at the hearing on Horseshoe's appeal, and was referred to in the Commission's proceedings as the "appellee." Indeed, the very rules the Commission adopted to govern hearings before it contemplate that the Division is to be accorded the status of a party in appeals before the Commission. For instance, with respect to the filing of briefs, the rules provide that "both parties may attach affidavits or other relevant, reliable documentary evidence to support their respective positions." Louisiana Register, Volume 19, No. 7, pg. 861; LAC 42:XIII, Chapter 9, § 903. Although the Division was treated by the Commission as a party in the administrative proceedings before it, and even though the Commission's own rules accord the Division status as a party, the Commission now takes the inconsistent position that the Division is not a "person" entitled to judicial review of that administrative proceeding.[3]
As is readily evident from an examination of the Riverboat Gaming Act and from consideration of the objectives behind it, the Division and the Commission are not the "same agency" as the appellees suggest. The legislature purposefully set up the Division and the Commission as separate and independent entities with different roles in the licensing process. Nor are their positions analogous to that of a district court and a reviewing court, as the trial court found. The Division's role is analogous to that of a traditional regulatory administrative agency; the Commission's position is analogous to that of a district court, and the district court empowered to hear appeals of Commission licensing determinations is analogous to an appellate court. If a regulatory administrative agency denied a license to an applicant, and the applicant obtained a court judgment ordering the regulatory agency to grant the license, there would be little doubt that the regulatory agency would be entitled to access to an appellate court to review this determination. When the respective positions of the Division, the Commission and the 19th Judicial District Court are properly analyzed, there is no justification in denying the Division access to the 19th Judicial District Court.
In light of the foregoing, we cannot accept appellees' position that the legislature intended to deprive the Division of access to the courts to challenge adverse licensing determinations by the Commission. Denying the Division, the chief regulator and enforcer of the Act, the right to seek independent judicial review of the Commission's licensing determinations would vastly minimize the Division's role in the licensing process, would undermine public confidence in the process, and would be contrary to the objectives of the law. On the other hand, granting the Division the right of judicial review preserves the Division's role in the licensing scheme, furthers the Act's goal of protecting the public safety and welfare and also fosters public confidence in the licensing process. After examining the Riverboat Gaming Act in its entirety, as well as considering the objectives behind it, we can only conclude that the Legislature intended to give the Division the *1376 right to seek judicial review of adverse rulings of the Commission on proposed riverboat gaming licenses. Accordingly, we find that the Division, a distinct and separate entity with the power to sue and be sued, is a "legal entity" under La.R.S. 4:504(20), and is therefore a "person" entitled to seek judicial review of adverse decisions of the Commission under La.R.S. 4:548.
Next, we address Judge McDonald's second basis for dismissing the Division's suit, namely, that only the Attorney General could represent the State of Louisiana in the appeal, and therefore, the Division could not maintain the appeal in its own right. However, by statute, the Attorney General is charged with representing the Commission. La.R.S. 4:508. When the Division requested that the Attorney General provide for representation in the appeal, the Attorney General refused, citing the "clear conflict of interest" present because the office is charged by statute with providing representation to the Commission.
We hold today, that the Division is a "person" entitled to seek judicial review of the Commission's decision. It is evident that the Attorney General cannot represent the Division in the appeal because his office represents the Commission. In order to give the Division's right of appeal any substance, we must conclude that the Division may maintain the appeal in its own name and in its own right, and it does not need permission of the Attorney General to proceed. The trial court erred in ruling otherwise.

SENATOR BANKSTON'S RIGHT TO APPEAL
Senator Larry Bankston, as a citizen of Louisiana and as a member of the Louisiana Legislature, filed a petition seeking judicial review of the Commission's decision, claiming to be "adversely affected" by its order. Because of our resolution of Senator Bankston's right to initiate the appeal as a citizen of this State, we pretermit all discussion of whether he could maintain the action as a legislator.
Senator Bankston resides in East Baton Rouge Parish, while the license under consideration was issued in Bossier Parish. He admits that he has no pecuniary interest in this litigation, but rather is advancing his interest as a taxpayer and a citizen of Louisiana to ensure that the license granted to Horseshoe, over the objections of the State Police, would be reviewed by an independent judicial officer in accordance with the Riverboat Gaming Act. Senator Bankston alleges that he is adversely affected by the decision of the Commission as it relates to his concerns as a citizen of this state in the integrity of the licensing process and the gaming industry as a whole, and in ensuring that the riverboat gaming industry is highly regulated to promote the utmost confidence of the public. He submits that the conduct of the Commission, in overruling the Division's suitability determination, and then attempting to insulate that decision from judicial review by challenging the Division's right to appeal, calls the entire licensing process into question.
The peremptory exception raising the objection of no right of action questions whether the plaintiff belongs to a particular class for which the law grants a remedy for a particular grievance, or whether the plaintiff has an interest in judicially enforcing the right asserted. G.I. Joe, Inc. v. Chevron, U.S.A., Inc., Pipeline Division, 561 So.2d 62 (La.1990). At issue is whether Senator Bankston has standing to bring the instant appeal. See League of Women Voters of New Orleans v. City of New Orleans, 381 So.2d 441 (La.1980). To answer this question, we must determine whether an individual citizen, who is advancing interests common to all citizens of Louisiana, may seek judicial review of a Commission licensing determination.
In support of their argument that Senator Bankston does not have a right of judicial review under the Riverboat Gaming Act, Horseshoe and the Commission rely on the principle of law set forth in a number of cases which hold that in order for a plaintiff to have standing to litigate a challenged action, the plaintiff must show some personal grievance in the outcome or some special interest separate and distinct from the public at large. League of Women Voters of New Orleans v. City of New Orleans, 381 So.2d at *1377 447; Fulford v. Green, 474 So.2d 972 (La. App. 1st Cir.1985); Louisiana Tax Collections, Inc. v. Bear Creek Storage Company, 474 So.2d 1337 (La.App. 2d Cir.1985). This principle of law was reflected in the case of Hello World Broadcasting Corporation v. International Broadcasting Corporation, 186 La. 589, 173 So. 115, 120-21 (1937), wherein the Court stated that "[i]t is well settled that one citizen has no right to champion the cause of a community where his interest in the matter is no different from that of any other citizen." The appellees contend that since Senator Bankston has shown no personal interest in the Commission's licensing decision, but is rather advancing his interest as a citizen of the State of Louisiana, he does not have an interest in the litigation which is separate and distinct from the public at large, and consequently, he does not have standing to attack the Commission's ruling. See also La.Code Civ.P. art. 681 which sets forth that "[e]xcept as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts."
However, these cases merely set forth general standing propositions and are not applicable to the issue presented in this case because the Riverboat Gaming Act sets forth its own standing requirement. Standing requirements differ according to how a plaintiff challenges a particular action. For instance, under the federal scheme, standing requirements differ depending on whether a plaintiff attacks an action on statutory or constitutional grounds. In Sierra Club v. Block, 622 F.Supp. 842, 847 (D.Colo.1985), quoting Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), the court noted the dichotomy as follows:
Where the party does not rely on any specific statute authorizing invocation of the judicial process, the question of standing depends upon whether the party has alleged such a "personal stake in the outcome of the controversy," as to ensure that "the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution." Where, however, Congress has authorized public officials to perform certain functions according to law, and has provided by statute for judicial review of those actions under certain circumstances, the inquiry as to standing must begin with a determination of whether the statute in question authorizes review at the behest of the plaintiff.
(citations omitted)
The fact that Senator Bankston, in seeking to advance his own interests as a citizen of Louisiana, may also be advancing interests common to all citizens does not end the standing inquiry. The Riverboat Gaming Act has its own standing requirement; thus, Senator Bankston is seeking judicial review pursuant to specific authorization in that substantive statute. Therefore, the only issue presented is whether Senator Bankston falls within the class of persons authorized to sue under the Riverboat Gaming Act. If he is a member of that group, he is authorized to challenge the Commission's decision irrespective of whether he may also be advancing interests common to the public at large.
The Riverboat Gaming Act authorizes any person who is "adversely affected" by a decision of the Commission to seek judicial review of that decision. La.R.S. 4:548. Because of the dearth of state law identifying precisely what a litigant must establish in order to be considered "adversely affected" for judicial review purposes, we shall turn to federal law for guidance.[4]
The Federal Administrative Procedure Act grants a right of judicial review to any person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. The federal courts hold that to be "adversely affected or aggrieved ... within the meaning of a statute," *1378 the plaintiff must prove that "the injury he complains of (his aggrievement or the adverse effect upon him) falls within the `zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for the complaint." Lujan v. National Wildlife Federation, 497 U.S. 871, 883, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990).
The Riverboat Gaming Act was enacted to further the growth of our State's economy, and benefit the general welfare of Louisiana citizens by creating additional revenues and new jobs. La.R.S. 4:502(A)(1). However, the Act was also created to protect the public health, safety, morals, good order and general welfare from the ills associated with the gambling industry. See La.R.S. 4:502(A)(4).
Senator Bankston alleges that his interest as a Louisiana citizen in the integrity of the licensing process, and the gaming industry as a whole, is affected by the Commission's action in overruling the State Police's suitability determination. Senator Bankston, as do all Louisiana citizens, has a strong interest in ensuring that the entire industry is highly regulated and that only those applicants who meet the requirements of the Act are licensed to conduct gaming activities in this state. The interests of Louisiana citizens in the integrity of the licensing process and the gaming industry as a whole are the very interests that the Riverboat Gaming Act was specifically designed to protect.
Clearly, the interests advanced by Senator Bankston fall within the zone of interests sought to be protected by the Riverboat Gaming Act. We need only decide whether Senator Bankston has alleged facts to illustrate that those interests were "actually affected". Lujan, 497 U.S. at 885, 110 S.Ct. at 3187. Senator Bankston alleged that the Commission failed to follow the dictates of the Act in granting Horseshoe's license. Specifically, he charged that the Commission attempted to usurp the Division's role in the licensing process by issuing a preliminary certificate of approval before the Division had a chance to rule on the application, a procedure which is not authorized in the Act. This allegation goes to the very heart of the distribution of powers in the Act itself, which was, as we noted above, designed to protect the public interest in the application process. We believe that the allegations in Senator Bankston's petition suffice to find that Senator Bankston's interests were "adversely affected" by the action of the Commission in overruling the Division's suitability determination within the meaning of the Riverboat Gaming Act. Accordingly, he is entitled to seek judicial review of that action under La. R.S. 4:548.

RES JUDICATA
The Division appeals the action of Judge Clark in dismissing its second appeal on an exception of res judicata. The Division's first appeal in the 19th Judicial District Court was dismissed by Judge McDonald on his own motion; that judgment is silent as to whether the dismissal was with or without prejudice. Because the judgment did not dismiss the Division's appeal with prejudice, we deem the judgment of dismissal to be without prejudice.[5]See Picone v. Lyons, 618 So.2d 475 (La.App. 4th Cir.1993); Simmons v. Dixon, 306 So.2d 67 (La.App. 1st Cir.1974). La.R.S. 13:4232 states that res judicata does not apply "[w]hen the judgment dismissed the first action without prejudice." Additionally, La.Code Civ.P. art. 1673 provides that "[a] judgment of dismissal without prejudice shall not constitute a bar to another suit on the same cause of action." Accordingly, because the first suit was dismissed without prejudice, it did not constitute a bar to another suit on the same cause of action, and Judge Clark erred in sustaining the exception of res judicata to the Division's second appeal.

PRESCRIPTION
Finally, we address Horseshoe's challenge to the action of the trial court in overruling *1379 its exceptions of prescription directed to the Division and Senator Bankston's petitions. Under La.R.S. 4:548, a person adversely affected by the Commission's decision must petition for appeal in the district court "within ten days of the action, order, or decision of the commission." The only issue is whether the Commission's roll call vote, or its written decision, constitutes the "action, order or decision of the commission" for the purpose of calculating the ten-day prescriptive period.
On January 29, 1994, following the conclusion of a two-day hearing on Horseshoe's appeal, the Commission members voted unanimously to overrule the Division. The Commission members also voted to reduce the ruling to a written document, which would incorporate the appropriate reasons expressed by the Commission members. The Commission members agreed that once a consensus was reached and a final document was obtained, the final document would be signed by the Chairman, who would then "forward it on as the decision of the commission." On February 10, 1994, the Commission's written decision was rendered.
The instant appeals were filed on February 22, 1994, more than ten days after the Commission's roll call vote, but within ten days, excluding legal holidays, of the date that the written decision was rendered by the Commission. Horseshoe urges that the appeals were untimely because the roll call vote constituted the decision of the Commission for the purposes of La.R.S. 4:548.
Horseshoe again turns to the provisions of the Administrative Procedure Act to resolve the issue. La.R.S. 49:958 provides that "[a] final decision or order adverse to the party in an adjudication proceeding shall be in writing or stated in the record." Horseshoe contends that the vote was stated into the record, and therefore constitutes the decision of the Commission for the purposes of La.R.S. 4:548. It argues that nowhere in the Administrative Procedure Act or the Riverboat Gaming Act is a "written decision" required.
However, the Commission members clearly voted that the "decision" of the Commission would be the written decision ultimately handed down on February 10, 1994. Moreover, the Commission adopted a rule requiring that its decisions be reduced to writing. This rule, reported in the Louisiana Register, Volume 19, No. 7, pg. 861 as LAC 42:XIII, Chapter 9, § 909, provides:
The Commission will render its decision on an appeal and the reasons therefor in writing within 20 days after the hearing on the appeal and must provide a copy of the decision to the supervisor and the appellant.
An administrative body is bound by its own rules and regulations. Central Louisiana Electric Company, Inc. v. Louisiana Public Service Commission, 377 So.2d 1188 (La. 1979). Because the Commission determined that its written decision would constitute the decision of the Commission, and the Commission's own rules require it to render its decisions on appeal in writing, the written decision issued on February 10, 1994 constitutes the "decision of the commission" for the purposes of calculating the ten-day prescriptive period under La.R.S. 4:548. Accordingly, these appeals, filed within ten days of that decision (excluding legal holidays), are timely, and Judge Clark correctly overruled Horseshoe's prescription exceptions.

CONCLUSION
Based on the foregoing, the judgments dismissing the Division's suits on exceptions of no right of action and res judicata are hereby reversed, and these matters are remanded to the trial courts for further proceedings. The judgment dismissing Senator Bankston's appeal is likewise reversed and remanded for further proceedings. The judgment overruling the exceptions of prescription is affirmed. All costs of this appeal are assessed to Horseshoe Entertainment.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
FOGG, J., dissents and assigns reasons.
PITCHER, J., dissents for reasons assigned by FOGG, J.
FOGG, Judge, dissenting.
I respectfully disagree with the majority.
*1380 La.R.S. 4:548 provides that "[a]ny person adversely affected by an action, order, or decision of the commission may appeal...." I believe that neither the Office of State Police, Riverboat Gaming Enforcement Division (the "Division") nor Larry Bankston falls within the definition of "any person adversely affected."

THE DIVISION
The legislature in promulgating The Louisiana Riverboat Economic Development And Gaming Control Act (the "Riverboat Gaming Act") created, within the Department of Public Safety and Corrections, the Riverboat Gaming Commission (the "Commission") and the Division. La.R.S. 4:510(A); 4:515. As part of its general powers and duties, the Division is charged with enforcing the provisions of the Act and the rules of both the Commission and the Division. La.R.S. 4:517. Additionally, the Division is responsible for issuing, denying or restricting licenses or permits. La.R.S. 4:518. The Commission's role is that of overseer. It is vested with the power to review the Division's disposition of applications for licenses and permits. The Commission may also reject any rule or regulation proposed by the Division. La.R.S. 4:519.
La.R.S. 4:548 provides for the judicial review of the actions of the Commission. It provides that "[a]ny person adversely affected by an action, order, or decision of the commission may appeal to the Nineteenth Judicial District Court in accordance with the provisions of the Administrative Procedure Act...."
The Division contends that it falls within the definition of "person" which is defined in La.R.S. 4:504 as "an individual, partnership, corporation, unincorporated association, or other legal entity" and, therefore, has a right to appeal. I disagree.
In the scheme of the Riverboat Gaming Act, the Commission and the Division are interrelated agencies with the common goal of regulating the riverboat gaming industry. They were both created within the Department of Public Safety and Corrections. The Division, however, is subservient to the Commission, which oversees both the rule and regulation making powers of the Division and the powers of the Division with respect to the issuance and denial of riverboat gaming licenses. La.R.S. 4:511(1), (4). Thus, the Commission's role is clearly to review the actions of the Division. In this posture, it would be inconsistent with the Act as a whole to interpret the term "person" to include the Division, and thereby place it in a potentially adversarial position as to the Commission. To interpret the term "person" to include the Division would allow the Division to appeal from a decision of its reviewing body and would lead to, as Judge McDonald stated in his reasons for decision, "ludicrous results."
This conclusion is further supported by the "Definitions" section of the Act which defines "person" as discussed above and separately defines the term "Division" as "the riverboat gaming enforcement division of the gaming enforcement section of the office of state police, public safety services, Department of Public Safety and Corrections." No mention is made of either term in the definition of the other. Rather, these terms appear to be mutually exclusive, a conclusion that is consistent with the statute when it is read as a whole.
Furthermore, the Riverboat Act was not intended to set up a separate and distinct appellate process. La.R.S. 4:548 requires that an appeal be taken in accordance with the provisions of the Administrative Procedures Act (the "APA"). To find that the Division can appeal a decision of the Commission would cause conflicts when proceeding with an appeal in accordance with the provisions of the APA. That legislation provides any "person" who is aggrieved by an adjudication may seek judicial review. La. R.S. 49:951(5) defines the term "person" as "any individual, partnership, corporation, association, governmental subdivision, or public or private organization of any character other than an agency." The APA, by eliminating agencies from the definition of "person", eliminates the situation we have herein, where an agency is suing its reviewing agency because they reached different results in an adjudicatory proceeding. The definition of "persons" found in the APA is therefore consistent with the scheme of the *1381 Riverboat Gaming Act. I believe it was the intention of the legislature that the definition of "person" found in the APA apply to appeals taken from an action of the Commission.
Therefore, accepting arguendo, that the Division falls within the definition of the term "legal entity" as it is used in La.R.S. 4:547, the Division is not a "person" under the Act and has no right to appeal the decision of the Commission.
The majority holds that allowing the Division to appeal a decision of the Commission "furthers the Act's goal of protecting the public safety and welfare and also fosters public confidence in the gaming process." I do not believe this is sound logic. I believe the reverse is true.
Furthermore, even if the Division could successfully argue that it is a "person" within the Act, there is no evidence that it was "adversely affected" by the actions of the Commission. The fact that the Commission can review the denial of a license and decide to grant the license does not adversely affect the Division; rather, it is simply a function of the scheme of the organization as set up by the legislature. The Division's assertion that the action of the Commission in overriding the decision of the Division effectively erased the Division's power is really a complaint by the Division that it has too little power under the Act. The granting of the powers to the Commission and the Division is a legislative function. It has no bearing on whether an agency is "adversely affected."
I further agree with Judge McDonald's conclusion that the Division did not have the legal authority to institute this action on behalf of the State of Louisiana. The Louisiana Constitution, Article 4, § 8, clearly establishes that the Attorney General is the chief legal officer of the state and shall have authority to institute, prosecute or intervene in any civil action or proceeding. La.R.S 49:461 prohibits any ministerial officer of the state from appearing in any state court in any legal action which the state may be a party to or have interested in, and designates the attorney general as the proper party to represent the state in such actions.
Furthermore, Section 508 of the Act is entitled "Commission and Division Legal Representation". It provides as follows:
The attorney general or his designee, who shall be a full-time assistant attorney general, shall be the legal advisor to the commission, shall counsel and advise the commission, and shall represent the commission in all legal proceedings. The commission shall reimburse the attorney general for the cost of advising and representing the commission.
No provision is made by this statute for any representation for the Division. Considering the constitutional provisions and the statutory provisions, only the attorney general can represent the State of Louisiana in litigation concerning the Riverboat Gaming Act. In this case, counsel for the Division did not have the authority to appear before the trial court as a special assistant attorney general or to file pleadings on behalf of the State of Louisiana.

LARRY BANKSTON
On appeal, Larry Bankston contends the trial court erred in maintaining the Commissioner's exception of no right of action and dismissing his lawsuit.
An action may be brought only by a person having a real and actual interest which he asserts. La.C.C.P. art. 681. The essential function of the peremptory exception of no right of action is to raise the question of whether a remedy afforded by law can be invoked by a particular plaintiff. Henry v. State, through Dept. of Health, 435 So.2d 565 (La.App. 3rd Cir.), writ denied, 441 So.2d 750 (La.1983). The exception of no right of action must be disposed of on the face of the petition alone and allegations of the petition must be accepted as true. La.C.C.P. art. 931
Mr. Bankston proceeds under La.R.S. 4:548, which authorizes a person "adversely affected" by a decision of the Commission to appeal such a decision. Accepting all of the allegations of fact in his trial court petition as true, Mr. Bankston has failed to demonstrate that he had any right which was adversely affected by the commission's overruling of the Division's denial of a riverboat gaming license to Horseshoe Entertainment. He *1382 does not allege that he has applied to the Division for a license or to the Commission for a preliminary certificate. He was not a party to any of the proceedings involving Horseshoe and he alleges no pecuniary interest in the licensing of Horseshoe. It is apparent from his petition that Mr. Bankston appeared in the trial court as a citizen of East Baton Rouge Parish, State of Louisiana. Thus, his argument that he has standing to appeal a decision of the Commission is premised on the supposition that any citizen of the State of Louisiana has standing to file such an appeal. We disagree.
Mr. Bankston's petition is completely devoid of any allegations as to any peculiar and personal interest he has in this litigation aside from the same concern held by the general public. He is not "adversely affected" by the decision of the Commission. Therefore, he has no right of action to maintain his lawsuit, and no right to bring this appeal.
For these reasons, I would affirm the judgments appealed.
NOTES
[1] In its motion, Horseshoe urges that it has expended millions of dollars in reliance on the issuance of the license to it and attached photographs of the riverboat and pavilion to show the status of construction. The Division filed a motion to strike all such references in Horseshoe's brief on the basis that the references and documents rely on evidence not adduced at the original hearing and are not properly before this court. We agree, and pursuant to Rule 2-12.13 of the Uniform Rules of the Court of Appeal, all references to the status of Horseshoe's construction efforts are hereby stricken from Horseshoe's motion and accompanying memorandum.
[2] In the motion to strike filed in connection with this appeal, the Division urges that two documents which do not appear in the record and which were not considered by Judge McDonald should be stricken from Horseshoe's brief. These documents reflect the Division's request that Attorney General Ieyoub provide legal assistance to the Division in appealing, and Mr. Ieyoub's refusal to provide such representation. These documents appear in the record of the other consolidated appeals and were referred to by this court in presenting the procedural background of this case. Because the right of the Division to appeal is at issue in both appeals, and because those documents form part of the record in the second appeal, we deny the motion.
[3] In P & G Retailers, Inc. v. Wright, 590 So.2d 1272 (La.App. 1st Cir.1991), this court stated that a party to an administrative proceeding has a constitutional right of access to the judicial branch of government, which exists independent of any statutory authority. For this court to rule that the Division is barred from seeking judicial review of the administrative proceeding to which it was a party would have constitutional implications.
[4] Both the Administrative Procedure Act and the Environmental Law allow appeals by persons who are "aggrieved" by an agency's decision. La.R.S. 49:964; La.R.S. 30:2024. In Matter of BASF Corporation, Chemical Division, 533 So.2d 971 (La.App. 1st Cir.1988), writ granted in part on other grounds and writs denied, 539 So.2d 624 and 541 So.2d 900 (La.1989), this court defined the term "aggrieved" as a party having "a real and actual interest which is or may be adversely affected by the DEQ's decision."
[5] Furthermore, Judge McDonald stated that he was dismissing the suit under the authority of La.R.S. 49:462, which gives the court authority to dismiss a suit prosecuted by a ministerial officer when the State has an interest therein. That provision explicitly provides that the proceeding shall be dismissed "without prejudice to the rights of the parties interested." Accordingly, although the judgment of dismissal was silent on the effect of the decree, the law required the dismissal to be without prejudice.