### NEWBLOCK et al. v. BOWLES.

No. 24932.   Feb. 5, 1935.

H. O. Bland, Saul A. Yager, and Poe, Lundy & Morgan, for plaintiffs in error.

Wm. Blake, for defendant in error.

BUSBY, J. This action involves the proper interpretation of certain provisions of the city charter of the city of Tulsa, Okla., and of ordinance No. 3988 of the city of Tulsa relative to the rights and authority of the board of commissioners of the city of Tulsa and the individual members thereof under such charter and ordinance.

The defendant in error, Anderson P. Bowles, was duly elected police and fire commissioner of the city of Tulsa, Okla., and, as such, by the provisions of the city charter of Tulsa, there was placed under his special charge the enforcement of all police regulations of the city. As such officer, the police and fire commissioner has exercised the power of appointing the city policemen, other than the chief of police. During the time of Bowles' tenure of office as police and fire commissioner, the board of commissioners of the city of Tulsa passed and approved ordinance No. 3977, creating and establishing a police department for the city of Tulsa, section 5 of which ordinance provided that all officers, members, and employees of the police department shall be nominated by the mayor and confirmed by a majority vote of the board of commissioners.

The defendant in error, as plaintiff, filed his petition in the district court of Tulsa county seeking to enjoin and restrain the

plaintiffs in error, as defendants, and each of them, from enforcing the provisions of section 5 of ordinance No. 3977 of the ordinances of the city of Tulsa. Soon thereafter ordinance No. 3977 was repealed and ordinance No. 3988 was enacted by the board of commissioners, which ordinance also provided for the appointment of the city policemen other than by the police and fire commissioner. The plaintiff then filed his supplemental petition and asked injunctive relief against the defendants in their attempt to enforce the provisions of ordinance No. 3988. Upon the issues joined by the defendants' answer, the matter was heard to the court, which rendered judgment for the plaintiff. The defendants brought this appeal.

The city ordinance No. 3988 provided for a merit system for the police department and for placing the powers and authority of selecting the policemen in the hands of a body designated in the ordinance as a merit commission. It is the contention of the plaintiff, the police and fire commissioner, that ordinance 3988 passed by the mayor and members of the board of commissioners, other than the plaintiff, is violative of the provisions of the charter and attempts to take from the plaintiff, as such commissioner, rights and authorities conferred upon and vested in him by the charter. The defendants deny that such rights and authority are vested in the plaintiff by the charter, and contend that the provisions of ordinance No. 3988 providing for a merit system for the police department are in no way in conflict with the city charter, or any rights conferred therein.

This court will take judicial notice of the city charter of the city of Tulsa, Okla., and all amendments thereto. Some of the provisions of the charter were made a part of the pleadings in the case, and other parts introduced into court as evidence.

The errors complained of, upon which the defendants base their right for reversal, are presented under four contentions. It is first contended that the trial court committed error in holding that the power to appoint members of the police force vested, under the charter, in the police and fire commissioner.

Under the provisions of the charter, the government of the city of Tulsa is separated into divisions or departments, and an office was created for each of the divisions. To each office there is elected an officer whose duties are to have general supervision and charge over the division or department to

which he is elected by the people. In addition thereto is elected a mayor, whose rights and duties under the charter as amended are those of a commissioner and who has a right to vote upon matters under consideration before the commission as a whole, or board of commissioners.

The city charter has undergone several amendments. Under amendment 20 the officers elected to the various offices of the different divisions of the city government are designated and named to conform to the name of the division to which they are elected. The first election thereunder was held in 1930. Prior to amendment 20 of the charter they were elected as commissioners without any such designation as to the particular division they were to occupy. The original provision relative to the powers of the board of commissioners in appointment of employees provided:

"Each member of the board of commissioners shall have the right to propose and name the employees in the department or departments under his immediate supervision, but a majority of the board shall have the power to reject any such proposal and to discharge any officer or employee of the city except the city attorney, and corporation judge."

This provision was by amendment 21 of the charter changed and is in part as follows:

"The four commissioners to be elected as herein provided: one shall be known and designated as 'Police and Fire Commissioner,' and who shall have under his special charge enforcement of all police regulations of said city and such other duties as may be required by the board of commissioners; one commissioner shall be known and designated as commissioner of streets and public property, who * * *.

"Said commissioners shall perform all of the executive duties of their respective departments to which they may be elected as above provided and said board as a whole shall have supervision of and be responsible for the administration of each of said departments."

It is over this change in the charter and its meaning that the gist of this controversy has arisen. Did the amendment increase or diminish the right of the commissioners of the four departments of city government relative to their authority to appoint employees in their respective departments? It is the contention of the plaintiff that under the provision of the amendment providing:

"Said commissioners shall perform all of the executive duties of their respective de-

partments to which they may be elected as above provided"

—it placed upon each commissioner the duties and obligations and vested them with the power to perform the executive duties pertaining to their respective departments, which necessarily included the power of appointment of policemen under their department created by ordinance, giving the board as a whole supervision and responsibility for the administration of each of said departments.

The construction placed upon the amendment by the defendants is that it only designated each of the commissioners as administrative officers, subordinate to the powers of the board of commissioners, and that it could not have been the intention of the framers of the charter to clothe one administrative or executive officer with full power to appoint all members of the police force of the city, and at the same time make the board of commissioners responsible for the administration of each of the departments, as provided in amendment 21 to the charter:

"* * * And said board, as a whole, shall have supervision of and be responsible for the administration of each of said departments."

It is very evident that the power to appoint the policemen of the city of Tulsa rests in some department or the head of some department by reason of the provisions of the charter, and this power has been exercised rightfully or wrongfully since the creation of the police department. In this connection, it is well to consider what, if any, appointive power has been conferred upon the mayor under the provisions of the city charter. Amendment 23 of the city charter provides:

"The mayor shall be a member of the board of commissioners with all of the powers and duties pertaining thereto. He shall be the chief executive officer of said city and shall see that all laws thereof are enforced. * * *

"He (the mayor) shall nominate all appointive officers of the city and such nomination shall be subject to confirmation by the board of commissioners by a majority vote thereof. * * * The officers to be thus nominated by the mayor and confirmed by the board of commissioners shall be all officers whose powers, duties, or salaries are prescribed or defined by ordinance of said city."

This provision must be construed in connection with paragraph 16 of article 11 of the charter, which provides:

"The term 'officer,' as used in this charter, shall apply only to those officers who are elected by the people, or are appointed or confirmed by the board of commissioners for a fixed and definite period, and the same does not include policemen, except the chief of police, and does not include other agents or employees of said city. * * *"

Under the well-defined and restricted powers of the mayor to appoint officers shown in these two sections, it cannot be said that he has any additional power by implication. It is a well settled rule of statutory and constitutional construction that where duties, authorities, or qualifications of public officers are definitely defined, all others are excluded. The maxim "expressio unius est exclusio alterius"—the expression of one thing is the exclusion of another—should be applicable in the instant case. Cornell v. McAlester, 121 Okla. 285, 249 P. 959; In re Bailey's Estate (Nev.) 103 P. 232; State v. Tucson Gas Electric Light & Power Co. (Ariz.) 138 P. 781.

Since the right to appoint policemen is by amendment 23, and paragraph 16, art. 11 of the charter, shown to be placed elsewhere than with the mayor of the city, where in the charter can we look for a specific or express grant or by necessary implication of such power, if such authority and power to appoint was not placed with the police and fire commissioner, who, by the voice of the people, was placed at the head of one of the divisions of the city government, and who, by the provisions of the charter, is required to perform all of the executive duties of his department to which he is elected and has under his special charge the enforcement of all police regulations of the city? It is generally conceded that where an act or charter confers upon a particular officer the sole power to supervise a municipal function consisting of a part of the municipal government, it gives to him the authority to appoint the officers or employees necessary to perform that function.

"An act conferring upon a particular officer sole power to supervise a municipal function gives him power to appoint the officers necessary to perform the function." 43 Corpus Juris, p. 603, section 982.

In the case of Sykes v. Heinzman, 100 N. J. L. 12, 125 Atl. 17, that court was dealing with a proposition similar to the one here presented. The governing body of the city of Passaic, under the law, was separated into five divisions similar to the four divisions here named. The executive and administrative duties were imposed upon the heads of the separate divisions. That court

held that the heads of the divisions of the city government, being possessed of executive and administrative functions with general control over the departments to which they were appointed, were empowered to appoint their subordinates.

The Supreme Court of the state of Ohio, in the case of State v. Kennon et al., 7 Ohio, 547, said:

"Directing by law the manner in which an appointment shall be made, and making an appointment, are the exercise of two different and distinct powers; the one prescribing how an act shall be done, being legislative; and the other—doing the act—being administrative."

The act of filling a public office by appointment is essentially an administrative act, and under the provisions of the charter of the city of Tulsa, can be exercised by any officer charged with performing the executive duties of the department to which he is elected.

In City Nat. Bank of Ft. Smith, Ark., v. Incorporated Town of Kiowa, 104 Okla. 161, 230 P. 894, this court held:

"In this state the officers of municipal corporations have only such powers and can exercise such authority only as are expressly granted by law, or necessarily to be inferred as incidental to the exercise of those expressly granted."

The charter is very specific in declaring the mayor to be the chief executive officer of the city, and is equally specific in defining what officers the mayor can nominate subject to the confirmation of the board of commissioners. It plainly says, "and the same does not include policemen, except the chief of police, and does not include other agents or employees of said city." If the police and fire commissioner, who has, by the charter provision, under his special charge the enforcement of all police regulations of the city, and is authorized to perform all of the executive duties of his department to which he is elected, has no authority to appoint the policemen in his charge, then, under the provisions of the charter, he has no authority to appoint any employee in connection with his department, and the same would be true as to the other commissioners so elected to their departments of the city government. Nowhere in the charter have we found any provision for the appointment of police or other employees of the city government under the supervision of the commissioners, except through the commissioners of the various departments in the performance of their executive duties

with respect to their departments. Can it be true that the framers of the city charter of the city of Tulsa, and the various amendments thereto, intentionally or inadvertently left so important a matter to speculation and interpretation? We think not. There seems to be no doubt that, in the framing of these charter amendments and the adopting of the same by the people, they intended to place in the commissioners of the several departments of the city government the power to appoint the various agents or officers and employees under their supervision not otherwise specifically provided for, and the same interpretation seems to have been placed upon these charter amendments in the election of the various commissioners to the head of the four divisions of the city government, and in the performance of these duties by the commissioners when elected.

In McCain v. State Election Board et al., 144 Okla. 85, 289 P. 759, this court held:

"The construction which has been placed upon a statute by the officer or governmental department charged with the carrying out of the provisions of the law is to be accorded due consideration by the courts in construing the statute."

To the same effect is the holding of this court in Leininger et al. v. Ward-Beekman & Brooks, Inc., 139 Okla. 292, 282 P. 467; Glasco v. State Election Board et al., 121 Okla. 119, 248 P. 642; Foot et al. v. Town of Watonga, 37 Okla. 43, 130 P. 597.

It is next contended that under the provisions of the original charter or its amendments, the board of city commissioners had full power, under subsection 3, paragraph 1, article 2, to establish and maintain a city police department, prescribe the duties of policemen, regulate their conduct and provide for the appointment of policemen and such other agents and employees that it deems necessary in the establishment of an efficient police department for the city.

The portion of the charter referred to in this contention provides:

"The city of Tulsa shall have power by ordinance duly passed to establish and maintain a city police department, prescribe the duties of policemen, and regulate their conduct."

That provision of the charter vested in the board of commissioners the legislative right to pass an ordinance establishing and maintaining a police department. It was one of the original provisions of the charter, as was the provision heretofore granted,

relative to the power of commissioners to propose the names of their employees:

"Each member of the board of commissioners shall have the right to propose and name the employees in the department or departments under his immediate supervision, but a majority of the board shall have the power to reject any such proposal and to discharge any officer or employee of the city except the city attorney and corporation judge."

The police department was established during the existence of these provisions, and the latter provision has been amended by amendment 21, heretofore quoted. Prior to such amendment the various commissioners were not designated prior to their election, as to the particular department they were to serve. By amendment 21, the commissioners were designated at the time of the election as to the department over which they would have charge, and the police and fire commissioner had placed under his special charge the enforcement of all police regulations of the city, and was further empowered by the charter amendment to perform all of the executive duties of his department, and which we think included the right to appoint the policemen other than the chief of police. These powers and authorities being conferred upon the separate commissioners by the charter, we do not think the board of commissioners had the power set forth in ordinance No. 3988, under consideration, to establish a police department and provide for the appointment of the policemen in contravention of the plan of appointment authorized by the charter. The power to establish by ordinance a city police department and prescribe the duties of policemen was in no manner affected by amendment 21 of the charter. The power vested in the police and fire commissioner by that amendment to the charter could not be taken away by ordinance.

The next contention involves the validity of ordinance 3988, relative to its being in conflict with the city charter. The defendants contend that there is no conflict and assign error in the court's finding to the contrary. The ordinance provides for the creation of a board of three officers, known as the merit commission, whose duties are to promulgate rules and regulations for the purpose of determining the qualifications of proposed policemen and to furnish such names to the chief of police at his request, and when so selected by the chief of police, to become policemen of the city. We have held that the portion of the ordinance which provides for the appointment of policemen,

other than by the police and fire commissioner, was invalid.

Considering other questions raised relative to other provisions of the ordinance, we find the tenure of office of the merit commission is six years. The offices of the merit commission are created by the board of city commissioners, who also make the appointment of the merit commissioners.

Amendment 24 of the charter makes provision for the creation of certain offices by the board of city commissioners, and provides:

"They (board of commissioners) shall have power to create such offices as they may deem necessary for a prudent and successful administration of the affairs of the city, and to fix the salaries of the persons appointed thereto; provided that no term of any such officers so created by them shall ever exceed the period of one year."

That the members of the merit commission are officers in contemplation of amendment 24 and that the tenure of such officers cannot exceed a period of one year cannot be questioned. Section 4 of ordinance 3988, relative to the tenure of office, provides for a six-year term, and is in direct conflict with the provision of charter amendment 24 herein quoted.

It is contended by the defendants that the invalidity of section 4 of the ordinance, relating to the term of office, does not affect the remaining portion of the ordinance, and for that reason that such part of section 4 which merely defines the term of office of the merit commissioners is severable from the other provisions, and that the term of office of the merit commissioners would be one year, as that provided for in the charter. This may or may not be true, and depends upon whether or not the proviso as to the tenure of the office fixes a limitation upon its creation; and also whether or not that portion held to be in violation of the charter is an essential and dependent part of said ordinance, without which the balance of the ordinance is complete in itself and capable of being executed in accordance with the apparent legislative intent, wholly independent of that part which was rejected.

Section 58 of the ordinance provides:

"The provisions of this ordinance shall be severable and if any of the provisions shall be held to be in contravention of the Constitution and laws of the state, the decision of the court shall not affect the validity of the remaining portions. It is hereby declared to be the intent of this ordinance that

the same would have been adopted had such unconstitutional or unlawful provision, if any, not been included herein."

The rule as to inseparable provisions of an ordinance is stated in 43 Corpus Juris, p. 548, and section 855, as follows:

"Where a municipal ordinance is entire, each part being essential to, and connected with, the balance, the invalidity of one part renders the whole invalid. The part that is good must be clearly distinguished from the part that is bad so that if the invalid portion is eliminated that which stands remains a distinct and complete ordinance capable of being enforced. The operation of the rule cannot be prevented by a provision in the ordinance that 'should any portion of this ordinance or contract be invalid, then so much thereof as shall not be invalid shall be and remain in full force and effect.'"

In Sherman Clay & Co. v. Brown, Mayor (Wash.) 231 P. 166, that court held:

"Remainder of act, after elimination of a portion of it on account of invalidity will not be held valid, unless remainder is complete and capable of being executed in accordance with apparent legislative intent, wholly independent of portion eliminated"

—and said:

"The question is whether those provisions being invalid, the whole ordinance is thereby rendered void. The rule is as stated by Cooley on Constitutional Limitations (5th Ed.) p. 212, that the balance of an act after the removal of a portion of it on account of invalidity or unconstitutionality will not be sustained unless 'that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent wholly independent of that which was rejected.'"

Under section 4 of the ordinance, the tenure of office of the merit commissioners is definitely fixed. The term of one shall expire on April 1, 1935, one April 1, 1937, and one April 1, 1939, and upon the expiration of the term of any commissioner, the board of commissioners shall appoint his successor for a term of six years. Can it be said that if the portion of the ordinance relative to the tenure of office of the merit commission be eliminated because of its conflict with the charter, the ordinance would still be complete in itself and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected? Can it be contended that, with the tenure clause eliminated, the members of the merit commission would hold office for a term of two years automatically and without further ordinance providing for same? We think not. The power vested in the board of commissioners by

amendment 24 above quoted may be exercised by the board when the terms of the amendment are complied with, and it is not complied with when the ordinance provides that the term of the officer shall be six years. Careful consideration has been given to the authorities cited by the defendants on this contention, and we find that the authorities deal only with the tenure of office created and not with the creation of the office, and we do not think the authorities control in the instant case.

In the case of Indianapolis Brewing Co. v. Claypool et al. (Ind.) 48 N. E. 228, that court was dealing with a similar question relative to a legislative act where the tenure of office exceeded the limit provided in the state Constitution. That court held:

"Such constitutional inhibition does not merely operate to limit the terms of such offices to four years, under the rule that a statute may be good in part, though void in part, because unconstitutional.

"Nor does it have the effect to leave the offices without any tenure being fixed by bringing them within the prior provisions of said section declaring that 'where the duration of any office is not provided for by this Constitution, it may be declared by law; and if not so declared, such office shall be held during the pleasure of the authority making the appointment,' since it is the 'creation' of the office that is forbidden, when it has the excessive tenure"

—and said:

"It is to be observed that it is not the tenure of more than four years that is prohibited, but it is the creation of an office the tenure of which shall be longer than four years. The forbidden act is the creation of the office of the particular description given, as much as the inhibition of more than four years' tenure. It would seem, therefore, that it is the creation of the office that is void, as much, if not more, than the act of fixing a tenure of more than four years. If the language were 'no office created by the Legislature shall have a longer tenure than four years,' we should have a very different question to decide."

We think it was the intent of the framers of the charter amendment 24 to grant authority to the board of commissioners to create offices only when the tenure of such office shall be no longer than one year.

It should be noted that under the provisions of section 4 of the ordinance, it attempts to delegate to the board of commissioners the right to appoint the merit commissioners. Under the provisions of amendment 23 and paragraph 16, article 11 of the charter above quoted, it is the duty of the

mayor to nominate all appointive officers of the city whose powers, duties, or salaries are prescribed or defined by ordinance. The term "officer" shall apply to those elected by the people or appointed for a fixed and definite period. Section 4 of the ordinance is in further conflict with the charter in that respect.

The object of a merit system such as proposed here for the police department of any municipality is manifest and deserves much praise. A majority of the voters of the city. of Tulsa, by proper charter amendment, may provide for such system. But it cannot be done by ordinance as sought by the defendants herein. Evidently it was greatly through the long tenure of office of the proposed merit commissioners that the framers of the ordinance involved expected beneficial results to the police department. But after eliminating the tenure provision of the ordinance involved as being in conflict with the charter provisions, we cannot say the part remaining is complete in itself and capable of being executed in accordance with the apparent legislative intent, wholly independent of that eliminated. Neither can we say the board of commissioners would have passed the ordinance without the inclusion of the tenure provision. Therefore, the ordinance as a whole must fail.

For the reasons herein expressed, the judgment of the trial court is sustained.

McNEILL, C. J., and RILEY, PHELPS, and GIBSON, JJ., concur.