655 So.2d 292 (1995)
STATE of Louisiana, through the DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, OFFICE OF STATE POLICE, RIVERBOAT GAMING DIVISION
v.
LOUISIANA RIVERBOAT GAMING COMMISSION AND HORSESHOE ENTERTAINMENT, a Louisiana Limited Partnership.
Nos. 94-C-1872, 94-C-1914.
Supreme Court of Louisiana.
May 22, 1995.
*293 Robert E. Piper, Jr., Shreveport, Dodson & Vidrine, Richard J. Dodson, Baton Rouge, Gold, Weems, Bruser, Sues & Rundell, Camille F. Gravel, Jr., Alexandria, Poynter, Mannear & Colomb (A Professional Law Corp.), W. Steven Mannear, Baton Rouge, Henry E. Braden, IV, New Orleans, for applicant.
Stephen A. Quidd, Howard P. Elliott, Jr., Jenifer Schaye, Hon. Richard P. Ieyoub, Sean Ashley Jackson, Larry Bankston, Baton Rouge, for defendant.
James D. Hall, Bossier City, for amicus curiae Bossier City.
KIMBALL, Justice.[*]
We granted certiorari in this case to decide whether the Gaming Enforcement Division of the Louisiana State Police (the Division) has the right to seek judicial review of a decision of the Louisiana Riverboat Gaming Commission (the Commission) under La.R.S. 4:548.

FACTS AND PROCEDURAL HISTORY
On March 29, 1993, Horseshoe Entertainment (Horseshoe), a Louisiana limited partnership, filed an application with the Division requesting a license to conduct gaming activities on a riverboat. On November 22, 1993, the Division conducted a hearing to determine whether to grant Horseshoe's application. By letter dated November 24, 1993, the Division informed Horseshoe that its application had been denied. The Division based its denial on the fact that Horseshoe's parent corporation had recently been fined $1,000,000.00 by the Nevada Gaming Board for administrative violations relating to noncompliance with financial reporting requirements and because certain Horseshoe shareholders or officers had filed inaccurate or incomplete tax returns or had failed to submit payments to the Internal Revenue Service.
Pursuant to La.R.S. 4:547, Horseshoe appealed the Division's denial of its application to the Commission. The record was lodged with the Commission, and both Horseshoe and the Division filed briefs with the Commission. The Commission held a hearing on January 28, 1994 and heard arguments from both Horseshoe and the Division. After the hearing, the Commission unanimously reversed *294 the Division's decision and ordered the Division to issue Horseshoe a license subject to certain conditions.[1]
On February 8, 1994, the Division sought judicial review of the Commission's decision in the Nineteenth Judicial District Court. The appeal, allotted to Judge Michael McDonald, named both the Commission and Horseshoe as defendants. The Division alleged that irregularities in the licensing process had invalidated the Commission's decision.[2] Principally, the Division criticized the Commission's decision to issue a certificate of preliminary approval to Horseshoe before the Division had ruled on Horseshoe's application. The Division asserted that the Commission's role in the application process is limited to hearing appeals after the Division denies a license and that by issuing the preliminary certificate, the Commission had taken an active role in the application process by attempting to control which applicant the Division would ultimately license. Further, the Division insisted the Commission could not make an unbiased decision in the Horseshoe appeal because the Commission had already issued Horseshoe a preliminary certificate of approval. The Division requested that the court grant the petition for judicial review, reverse the decision of the Commission, and deny the license.
In connection with its petition, the Division requested a stay of the Commission's decision. Judge McDonald granted the stay on February 8, 1994. Meanwhile, the Attorney General's office, on behalf of the Commission, filed a motion to dismiss the Division's appeal, asserting that under the Louisiana Constitution or applicable statutes only the Attorney General or his duly authorized designee may represent the State of Louisiana in a court of law. The Attorney General submitted that because the Division's attorney was not authorized by the Attorney General to file the appeal on behalf of the state, the suit was improperly filed.
On February 9, 1994, Judge McDonald vacated the stay order. The following day, he dismissed the Division's appeal on his own motion, holding that the Division was not a "person" who could seek judicial review of a decision of the Commission. Judge McDonald reasoned that allowing the Division to appeal a decision of its reviewing body would create a ludicrous result, analogous to allowing a district court to appeal an unfavorable decision of an appellate court to this court. He also dismissed the Division's action on the basis that it had been improperly filed because the Attorney General was the proper party to represent the State of Louisiana in the lawsuit, not the Division. Judge McDonald denied the Division's motion for reconsideration and motion for a new trial on February 23, 1994.
By letter dated February 22, 1994, the Division informed Horseshoe that it had been ordered by the Commission to issue Horseshoe a license to conduct gaming activities on a riverboat and that it was issuing the license subject to seven conditions which the Commission had stipulated in its decision. See supra at note 1.
On that same date, two appeals challenging the Commission's action were filed in the Nineteenth Judicial District Court. The Division *295 filed the first appeal[3], naming only Horseshoe as a defendant. Mr. Larry Bankston, a member of the Louisiana State Senate, filed the second appeal in his individual capacity, alleging that as a citizen of this state and a member of the legislature, he was "adversely affected" by the Commission's decision reversing the Division. Pursuant to a motion filed by Horseshoe, the two cases were consolidated in Division "D" of the Nineteenth Judicial District Court and assigned to Judge Janice Clark.
On March 1, 1994, the Commission filed a petition, seeking to intervene in the proceedings. Horseshoe and the Commission then filed exceptions of res judicata, prescription, no cause of action and no right of action directed toward the Division's petition. Horseshoe also filed an exception of lack of procedural capacity against the Division. Moreover, Horseshoe and the Commission filed exceptions of no right of action, no cause of action, and prescription against Bankston's petition.
Judge Clark conducted a hearing on the foregoing exceptions on March 4, 1994. After the hearing, she: (1) denied the Commission's petition of intervention; (2) denied Horseshoe's exceptions of prescription; (3) granted Horseshoe's exception of res judicata, thereby dismissing the Division's appeal; and (4) concluding that Bankston did not have a right to appeal the Commission's decision, sustained Horseshoe's exception of no right of action, thereby dismissing Bankston's appeal.
The parties filed numerous appeals in the Louisiana First Circuit Court of Appeal in response to the rulings by Judges McDonald and Clark: (1) the Division appealed Judge McDonald's ruling that it did not have a right to seek judicial review of the Commission's action and Judge Clark's dismissal of its second appeal pursuant to the exception of res judicata; (2) Bankston appealed Judge Clark's decision to dismiss his suit on the exception of no right of action; and (3) Horseshoe appealed Judge Clark's denial of its prescription exceptions. See State v. Louisiana Riverboat Gaming Com'n, 94-0702, 94-0730, 94-0735 (La.App. 1st Cir. 6/17/94), 640 So.2d 1368.
On appeal, the first circuit reversed the rulings which had dismissed the suits on the basis of no right of action and res judicata but affirmed the trial court decision overruling the exceptions of prescription.
Concluding that the Division has the power to appeal adverse decisions of the Commission, the court of appeal employed several modes of analysis. First, the court reasoned the Division has the right to appeal adverse Commission decisions because the term "person" as defined in the Riverboat Gaming Act supersedes the definition of "person" in the Administrative Procedure Act, La.R.S. 49:951 (the APA). Second, the court of appeal found that the Riverboat Gaming Act was created, in part, to foster public confidence in the licensing process and that denying the Division the right to obtain an independent judicial review of the Commission's action would undermine public confidence in the licensing process. The court of appeal reasoned that it would be inconsistent for the legislature to bar the Division from challenging Commission licensing decisions because the division can challenge the Commission's rules and regulations by bringing an action for declaratory judgment. Next, the court of appeal considered the fact that the Commission had afforded the Division the status of a "party" in Horseshoe's appeal before the Commission but had taken an inconsistent position on appeal by arguing the Division is not a person entitled to judicial review of adverse Commission decisions. The court then analyzed the roles of the parties in this case and reasoned that a regulatory agency, under the facts of this case, would have access to judicial review, and therefore no justification existed to deny the Division the right to appeal. Finally, the court of appeal *296 reasoned that denying the Division the right to seek judicial review would minimize the Division's role in the licensing process and would be contrary to the objectives of the law. The court reasoned that granting the Division the right to seek review, on the other hand, would preserve the Division's role in the licensing scheme, protect public safety and welfare, and foster public confidence in the licensing process. State v. Louisiana Riverboat Gaming Com'n, 94-0702, 94-0730, 94-0735, pp. 14-15, 640 So.2d 1368, 1375-76.
All parties to the action in the court of appeal, except the Division, filed applications for certiorari in this court. We granted certiorari to consider the correctness of the court of appeal's decision. State v. Louisiana Riverboat Gaming Commission, 94-1872, 94-1913, 94-1914 (La. 11/4/94), 644 So.2d 1063-64.[4]

ISSUE
This case presents, as a threshold issue, the question of whether the Division is a "person adversely affected by an action, order, or decision of the Commission" within the meaning of La.R.S. 4:548 such that it may "appeal" adverse decisions of the Commission.
For the reasons which follow, we reverse the decision of the court of appeal and conclude that the Division cannot appeal a decision of the Commission under the Riverboat Gaming Act as it currently exists. Moreover, our decision on this issue is dispositive of this case, and we, therefore, need not address the following issues raised by the applicants: (1) whether the Division, by complying with the Commission's order to issue a license to Horseshoe, waived the right to challenge that order, and (2) whether the Department of Public Safety can sue on the state's behalf without the participation of the Attorney General.

DISCUSSION
By Acts 1991, No. 753, § 1, the Louisiana Legislature enacted the Louisiana Riverboat Economic Development and Gaming Control Act, La.R.S. 4:501 et seq. (Riverboat Gaming Act or the Act). This comprehensive legislative scheme, which contains twelve parts, provides, inter alia, a licensing process for riverboat operators seeking to conduct gaming activities on riverboats in Louisiana.
Parts II and III of the Riverboat Gaming Act create two separate and distinct bodies within the Department of Public Safety and Corrections and vests each with separate duties and responsibilities in furtherance of the Act's purposes. The Division, created by La.R.S. 4:515, is vested with regulatory and enforcement powers. Specifically, the act gives the Division the power to inspect gaming premises, devices, or equipment; seize or impound gaming devices for examination and inspection; examine and audit licensees' books, records, and papers; deny, limit, restrict, suspend or revoke applications for licenses; impose penalties; issue subpoenas, interrogatories, or emergency orders; and a variety of other enumerated powers. See La.R.S. 4:517. Louisiana R.S. 4:518, entitled "Division Responsibilities," authorizes the Division, inter alia, to investigate an applicant's qualifications; issue, deny, condition, or restrict licenses and permits; investigate violations of the Riverboat Gaming Act; conduct hearings; require licensees to use a cashless wagering system; conduct on-sight observations to review gaming activities; and request information, materials, or other data from licensees or permittees.
Louisiana R.S. 4:510 creates the Riverboat Gaming Commission, a rule and policy making body comprised of seven members who are appointed by the governor and confirmed by the Louisiana State Senate. The Act gives the Commission the power to promulgate rules for, and to determine: riverboat sailing routes, minimum insurance levels for licensees, riverboat design specifications, and procedures for negotiable instruments transactions. Moreover, and more importantly in this particular case, the act clearly vests the Commission with oversight authority over the Division by giving the Commission the *297 power in La.R.S. 4:511(1) to "hear and determine all appeals relative to the granting, suspension, revocation, condition, or renewal of all licenses, permits, and applications." Similarly, La.R.S. 4:511(4) gives the Commission the power to "reject any rule or regulation to be proposed by the Division and submitted to the Commission which is unacceptable [to the Commission]."
Because the issue in this case is whether the Division has the right to appeal a decision of the Commission, it is necessary to examine the Riverboat Gaming Act's provisions for appealing decisions or orders of the Division and Commission. The provisions governing appeals of decisions of the Division and Commission are set forth in Part IX of the Act. Louisiana R.S. 4:547 outlines the procedure for appealing orders of the Division:
A. Any person whose application for a license or permit has been denied by the division or any person adversely affected by an action, order, or decision of the division may appeal the action, order, or decision of the division to the commission by filing a notice of appeal with the commission within seven days of certified mailing of notice of the action, order, or decision by the division. The division, upon notice of appeal to the commission, shall transmit to the commission the record of the proceedings before the division at which the action, order, or decision appealed from was taken. The person appealing an action, order, or decision of the division shall remit to the division the cost of preparing the record of the proceedings before the division.
B. The commission shall hear all appeals from actions, orders, or decisions of the division. The commission may reverse or modify an action, order, or decision of the division if it finds, based upon the record of the proceedings before the division, that the action of the division was clearly contrary to the facts in the record or contrary to the provisions of this Chapter or the rules and regulations of the division.
Louisiana R.S. 4:548 contains the procedure for appealing decisions of the Commission:
Any person adversely affected by an action, order, or decision of the commission may appeal to the Nineteenth Judicial District Court in accordance with the provisions of the Administrative Procedure Act, except that notice of appeal shall be given to the commission and petition for appeal shall be filed with the district court within ten days of the action, order, or decision of the commission. (emphasis added).
As the foregoing provisions make clear, only "persons adversely affected" may appeal adverse decisions of the Division or Commission. Moreover, La.R.S. 4:548 provides that appeals of decisions of the Commission must be taken in accordance with the provisions of the APA The APA defines "person" as "any individual, partnership, corporation, association, governmental subdivision, or public or private organization of any character other than an agency." La.R.S. 49:951(5). Louisiana R.S. 4:504(20), on the other hand, provides that, as used in the Riverboat Gaming Act, "person" means "an individual, partnership, corporation, unincorporated association, or other legal entity." The question we must decide, then, is whether the legislature, by using a different definition of "person" in the Riverboat Gaming Act, intended to permit the Division to have the right to appeal a decision of the Commission.

ADMINISTRATIVE LAW PRINCIPLES
We first conduct a historical examination of the right of agencies to appeal adverse decisions of other agencies in order to ascertain whether the legislature intended to give the Division the right to appeal a decision of the Commission. Prior to the enactment, and adoption by a majority of U.S. states, of the 1961 version of the Model State Administrative Procedure Act, which specifically excluded "agencies" from being able to claim judicial review of decisions of other agencies, courts across the country faced the question of whether a subordinate official or agency had standing to challenge decisions of a superior administrative board or tribunal. Most of the earlier cases involved attempted appeals by tax assessors or other revenue officers from decisions of tax boards in favor of taxpayers, but some cases involved administrative *298 agencies as well. In case after case, courts denied the officials or agencies standing to appeal. See In re Proposed Assessment of County Treasurer, 219 Iowa 1099, 260 N.W. 538 (1935); Ind. School Dist. v. Board, 230 Iowa 924, 299 N.W. 440 (1941); King v. Stark County, 72 N.D. 717, 10 N.W.2d 877 (1943); County Bd. of Educ. v. Parker, 242 Iowa 1, 45 N.W.2d 567 (1951); Dep't of Labor and Indus. v. Cook, 44 Wash.2d 671, 269 P.2d 962 (1954); Assessors of Haverhill v. New England Tel. and Tel. Co., 332 Mass. 357, 124 N.E.2d 917 (1955); Scearce v. Simmons, 294 S.W.2d 673 (Mo. App.1956); State ex rel. Belle-Bland Bank v. Donnelly, 287 S.W.2d 872 (Mo.1956); New York v. New York Univ., 3 A.D.2d 954, 162 N.Y.S.2d 386 (1957); State v. Donnelly, 365 Mo. 686, 285 S.W.2d 669 (1956); Sprague Oil Serv., Inc. v. Fadely, 189 Kan. 23, 367 P.2d 56 (1961); Fadell v. Kovacik, 242 Ind. 610, 181 N.E.2d 228 (1962).
Over time, a number of exceptions developed, but invariably the exceptions arose in situations where the parties were truly adverse to one another. One such exception allowed a state agency to challenge the official ruling or action of another state agency where the interests represented by the agencies were geographically distinct or separate. See Milford v. Comm'r of Motor Vehicles, 139 Conn. 677, 96 A.2d 806, 808 (1953). See also Moede v. Stearns County, 43 Minn., 312, 45 N.W. 435 (1890).[5]
Moreover, prior to the enactment of the 1961 version of the Model State Administrative Procedure Act, those states with statutory provisions requiring standing to appeal agency decisions, usually afforded relief to "any person aggrieved" but did not provide a technical definition of "person." See Model State Administrative Procedure Act, 1946 Act (U.L.A.) § 12 (superseded). Prior to the widespread adoption of the Model State Administrative Procedure Act of 1961, the law across the country could have been summarized as follows:
In common usage and in ordinary signification the term "person" does not include the sovereign, and in neither ordinary nor legal significance does the word embrace a government.
The government ... and its agencies are not ordinarily to be considered as within the purview of a statute.... In general, the word "person" used in a statute will not be construed so as to include the sovereign.. or an agency thereof.
See 70 C.J.S. Persons § 688 (1951) and 82 C.J.S. Statutes § 317 (1953).
The original provisions of Louisiana's APA, enacted by Acts 1966, No. 382, were derived from the Model State Administrative Procedure Act of 1961. The 1961 model act and the Louisiana APA contain identical definitions of "person," as follows: "any individual, partnership, corporation, association, governmental subdivision, or public or private organization of any character other than an agency." (emphasis added). Professor Frank Cooper, in his treatise on state administrative law, explained the importance of the exclusion of agencies as follows:
While the earlier version of the Model State Act contained no definition of the term "person" (nor, indeed, do most of the existing state administrative procedure laws), the Revised Model State Act, borrowing from the Federal Administrative Procedure Act incorporates a definition [of "person"] which is principally noteworthy in its exclusion of agencies from the term "person." (Italics and bracketed matter added).
The Revised Model State Act provides Section 1(6): "`Person' means any individual, partnership, corporation, association, governmental subdivision, or public or private organization of any character other than an agency." This means, in net result, that while an agency is normally a party to the proceeding it is conducting, and while one agency may become a party to proceedings being conducted by another agency, still agencies are not as such entitled to the privileges which the Revised Model State Act creates for persons. This may become relevant in a number of connections. *299 For example, Section 15 of the Revised Model State Act confers standing to claim judicial review on persons who are aggrieved by a final decision in a contested case. Basically, the concept is that there should be two categories: one for the agencies, and the other for all legal entities dehors the agencies. (emphasis added).
Frank E. Cooper, State Administrative Law, p. 131 (1965).
The widespread adoption of the Model Uniform Administrative Procedure Act of 1961 made it easier for state courts facing the issue of whether one agency could appeal an adverse decision by another agency. In Pritchard v. State, Div. of Voc. Rehab., 540 P.2d 523 (Wy.1975), Pritchard, an employee of the Wyoming Department of Health and Social Services (the department) was terminated. Pritchard sought review of the department's decision to terminate him with the Wyoming Career Service Council (CSC). After reviewing the case, the CSC reversed the department and ordered Pritchard reinstated. The department appealed the decision to a Wyoming state district court. Ultimately, the court reversed the CSC's order, and Pritchard appealed to the Wyoming Supreme Court.
On its own motion, the Wyoming Supreme Court recognized the district court did not have jurisdiction to hear the department's appeal of the CSC order, and reversed the district court judgment. The court made that decision after recognizing that because the Wyoming Administrative Procedure Act's[6] definition of "person" specifically excluded agencies, an agency could not be a "person aggrieved or adversely affected" and therefore could not appeal to the district court from an adverse ruling of the CSC. The court noted:
We recognize the concept which holds that if an "agency" is given a specific right to appeal to the court, such a grant is within the power of the legislature and must be honored. But there must be an applicable appeal procedure spelled out in the statute. It cannot be inferred and, as here, where the statute specifically excludes an agency's right of appeal, there cannot be any question but that the agency enjoys no such appellate privileges.
Id. at 529.
Other decisions from across the country express this same view. See Williams v. Haw. Medical Serv. Ass'n, 71 Haw. 545, 798 P.2d 442 (1990); In re Eric G., 65 Haw. 219, 649 P.2d 1140 (1982); Iowa Dep't of Revenue v. Iowa St. Bd. of Tax Review, infra; Mead v. State Dep't of Health, 91 Nev. 152, 532 P.2d 611 (1975); Ramsay v. Sarkas, 110 R.I. 590, 295 A.2d 416 (1972); Mortensen v. Pyramid Sav. and Loan Ass'n, 53 Wis.2d 81, 191 N.W.2d 730 (1971); State ex rel. Broadway Petroleum Corp. v. Elyria, 18 Ohio St.2d 23, 247 N.E.2d 471 (1969); Fadell v. Kovacik, 242 Ind. 610, 181 N.E.2d 228 (1962); E. Tenn. Health Improv. Council, Inc. v. Tenn. Health Facil. Comm'n, 626 S.W.2d 272 (Tenn.App.1981).
While Louisiana's version of the APA maintains the definition of person from the 1961 Model State Administrative Procedure Act, the Model State Administrative Procedure Act was revised in 1981. The 1981 version of the model act defines "person" as:
an individual, partnership, corporation, association, governmental subdivision or unit thereof, or public or private organization or entity of any character, and includes another agency.

See Model State Administrative Procedure Act, § 1-102(8), 15 U.L.A. 11 (1981). (emphasis added).[7] Unlike the 1961 definition, the 1981 definition of "person" acknowledges that an administrative agency may be considered a "person" under the model act's provisions.

*300 This definition is broader than the 1961 Revised Model Act definition ... because it includes an "agency" other than the agency against whom rights under this Act are asserted by the "person." Inclusion of such agencies and units of government insures, therefore, that other agencies or other governmental bodies can, for example, petition an agency for the adoption of a rule, and will be accorded all the other rights that a "person" will have under the Act.

Comment to Model State Administrative Procedure Act § 1-102, 15 U.L.A. 14 (1981) (emphasis added).
In Hawaii, Dep't of Finance v. Haw. Civ. Serv. Comm'n, 77 Hawai'i 396, 885 P.2d 1137 (App.1994), a Hawaii county employee who unsuccessfully applied for employment with the county department of finance appealed the department's selection decision to the Hawaii County Civil Service Commission. The commission reversed the department, and the department appealed. The court held that under the pre-1993 statute governing appeals from administrative agency adjudicative decisions,[8] only a person (as opposed to an agency) could appeal an adverse decision by the commission, itself an agency. In deciding the case, the court held that under the statute in force at the time the appeal was taken (a statute almost identical to our statute) an agency was not a "person" who could appeal the decision of another agency. The court's conclusion that it did not have jurisdiction was based upon its examination of the wording of the Hawaii statute, which was based on the 1961 Model State Administrative Procedure Act, and by comparing it to the 1981 version of the Model State Administrative Procedure Act. After comparing the two statutes, the court concluded that the change in the Model State Administrative Procedure Act supported its denial of jurisdiction. The court noted:
Hence, whereas the present definition of "persons" would preclude an agency ... from appealing an adverse decision to the circuit court, the revised definition of "person," if adopted in Hawaii, would clearly permit the agency to file such an appeal, because the definition of a "person" entitled to judicial review under HRS § 91-14(a), would include an "agency."
Thus, the 1981 revision clearly establishes that the 1961 model act definition of "persons" which is like our own, did not permit a party agency to appeal an adverse order issued by an adjudicating agency.
County of Hawaii, 885 P.2d at 1140. While the 1981 revision of the Model State Administrative Procedure Act would permit an agency, like the Division, to appeal an adverse decision of the Commission, the Louisiana Legislature did not enact the 1981 version of the Model State Administrative Procedure Act.
It is undeniable that the Division is an "agency" as defined under Louisiana's APA. Louisiana Revised Statutes 49:951(2):
[A]s used in ... [the Administrative Procedure Act] "[a]gency" means each state board, commission, department, agency, officer, or other entity which makes rules, regulations, or policy, or formulates, or issues decisions or orders pursuant to, or as directed by, or in implementation of the constitution or laws of the United States or the constitution and statutes of Louisiana, except the legislature or any branch, committee, or officer thereof, any political subdivision, as defined in Article VI, Section 44 of the Louisiana Constitution, and any board, commission, department, agency, officer, or other entity thereof, and the courts.
Under this definition, the Division is clearly an "agency" because, by virtue of its authority under La.R.S. 4:517 and 4:518, it makes rules, regulations, and policies in addition to formulating and issuing orders. Because the Division is an "agency" as defined in the APA, the Division is excluded from the APA's definition of "person."

THE RIVERBOAT GAMING ACT
The Division argues, however, that by using a different definition of "person" in the Riverboat Gaming Act, the legislature intended to give the Division the right to appeal adverse decisions of the Commission.
*301 Our examination of the Riverboat Gaming Act convinces us that because the legislature did not expressly give the Division the right to appeal adverse decisions of the Commission and because the Division's proposed interpretation, that it is a person, would lead to absurd results, the legislature did not intend to give the Division the right to appeal.
The Division argues that the definition of person found in the Act affords the Division a right to appeal because the Division is an "other legal entity" under La.R.S. 4:504(20), supra. Horseshoe and the Commission, on the other hand, argue that the legislature did not intend to designate the Division as a "person" in the Riverboat Gaming Act and that the phrase "other legal entity" is a "catch-all" phrase for legal entities similar to partnerships, corporations, or unincorporated associations such as, for example, limited liability companies,[9] who might come under the jurisdiction of the Division and Commission.
The Division relies on Corbello v. Sutton, 446 So.2d 301 (La.1984), to support its contention that because the Riverboat Gaming Act defines person to include "other legal entities," the Division is a person. This reliance is misplaced. In Corbello, supra, a case concerning the Conservation Act, La.R.S. 30:1 et seq., we held that the provisions of the APA were not intended to supercede the specific provisions of other administrative acts but were intended to create administrative procedures in those instances where none existed. We further held that because the Conservation Act contained specific administrative provisions, those specific administrative provisions prevailed over inconsistent provisions in the APA.
In this case, the Riverboat Gaming Act specifically provides that the procedure for appeals of Commission decisions shall be in accordance with the APA. The only perceptible inconsistency is the fact that the Riverboat Gaming Act contains a different definition of "person." This difference, however, is only relevant if the legislature intended to include the Division as an "other legal entity."
For the following reasons, we conclude that even though the legislature employed different definitions of the term "person" in the Riverboat Gaming Act and the APA, it did not intend for the Division to constitute a "person adversely affected," and therefore the Division does not have the right to appeal decisions of the Commission.
First, the Division's argument fails to take into consideration the principle that appeals by state agencies of decisions made by other agencies are disfavored unless the right to such an appeal is specifically conferred by statute. Iowa Dept. of Rev. v. Iowa St. Bd. of Tax Review, 267 N.W.2d 675 (Iowa 1978); Kansas City v. Reed, 546 S.W.2d 727 (Mo.App.1977); Martin v. Dist. Court, 191 Colo. 107, 550 P.2d 864 (1976); Kostman v. Pine Lawn Bank and Trust, 540 S.W.2d 72 (Mo.1976); McTaggart v. Public Serv. Comm'n, 168 Mont. 155, 541 P.2d 778 (1975); State ex rel. Hood v. Wash. State Pers. Bd., 82 Wash.2d 396, 511 P.2d 52 (1973); Mortensen v. Pyramid Sav. and Loan Ass'n, 53 Wis.2d 81, 191 N.W.2d 730 (1971). Though the Riverboat Gaming Act contains a definition of "person" which does not exclude "agencies" as the APA's definition of person does, it cannot be said that it specifically confers a right to appeal upon the Division. By providing that appeals would be governed in accordance with the APA, the legislature was mindful of the APA's provisions and, as such, was aware that under those provisions the Division, as an agency of the state, would not have the right to appeal decisions of the Commission.[10] The legislature elected not to specifically give the Division the right to appeal decisions of the Commission, and we decline to create such a right in the absence of a clear legislative expression in that regard.
*302 Second, the Division's argument, that the legislature intended to give it the right to appeal, conflicts with the settled rule of statutory construction that the mention of one thing in a statute implies the exclusion of another thing. This time-honored maxim, the doctrine of Expressio Unius est Exclusio Alterius, dictates that when the legislature specifically enumerates a series of things, such as the Division's enumerated powers in this case, the legislature's omission of other items, which could have easily been included in the statute is deemed intentional. See State ex rel. Fitzpatrick v. Grace, 187 La. 1028, 175 So. 656 (1936); Burgin v. Forbes, 293 Ky. 456, 169 S.W.2d 321, 325 (1943); Newblock v. Bowles, 170 Okl. 487, 40 P.2d 1097, 1100 (1935); Sutherland Statutory Const. § 47.23 (5th Ed.1992); Earl T. Crawford, The Construction of Statutes, § 195, at 334 (1940).
As discussed, supra, the Riverboat Gaming Act vests the Division with a variety of regulatory and enforcement powers, including, inter alia: inspecting gaming premises, devices, or equipment; seizing gaming devices; examining and auditing licensee books or records; suspending or revoking licenses; imposing sanctions and penalties; investigating licensee backgrounds; and denying, conditioning, or restricting licenses.
Even though the Act contains all the foregoing powers, nowhere does it explicitly state that the Division is a "person" or that the Division shall have the right to appeal decisions of the Commission. Thus, by failing to explicitly provide for the right to appeal, it seems clear that it was not the legislature's intent to give the Division that right.[11]
Third, our review of the Riverboat Gaming Act convinces us that to construe the definition of "person" in the Act to include "division" would lead to absurd results. Courts should avoid constructions which will render legislation absurd. Rather, statutes must be interpreted in such a manner as to render their meaning rational, sensible, and logical. Freechou v. Thomas W. Hooley, Inc., 383 So.2d 337 (La.1980); Smith v. Vinton, 209 La. 587, 25 So.2d 237 (1946); Graham v. Republican State Central Committee, 193 La. 863, 192 So. 374 (1940); State v. Standard Oil Co., 188 La. 978, 178 So. 601 (1937); See also Sutherland Statutory Construction, § 46.07 (1992); Crawford, Construction of Statutes, § 177 (1940).
"Person" is used frequently throughout the Riverboat Gaming Act, but acceptance of the Division's contention that it falls within the definition of "person" would, in nearly every one of those instances, lead to absurd results. For example, La.R.S. 4:530, located in Part VII of the Act, sets forth the procedure for applications and licensing of riverboats and provides in pertinent part:

*303 A. No person shall be eligible to receive a license to conduct gaming operations on a riverboat or any license or permit issued pursuant to the provisions of this Chapter unless the division finds that:
(1) The applicant is a person of good moral character, honesty, and integrity.
(2) The applicant is a person whose prior activities, criminal record, if any, reputation habits, and associations do not pose a threat to the public interest of this state... (emphasis added).
Similarly, La.R.S. 4:532 which concerns the application process provides in pertinent part:
A. Every person desiring to obtain a gaming license or permit shall make application to the division on a form and in a manner prescribed by the division. (emphasis added).
La.R.S. 4:533(B), which prescribes the procedure for hearings on applications for licenses to conduct gaming operations, states:
(B) Within ten days following the conclusion of the public hearing the division shall grant or deny. No person shall be granted or denied a license without a hearing, unless the maximum number of licenses authorized under this Chapter have been issued. (emphasis added).
These provisions are merely examples of some of the uses of the term "person" in the Riverboat Gaming Act. However, these statutory provisions are strong evidence that the legislature did not intend for the Division to be considered a "person" as that term is defined in the Riverboat Gaming Act. Rather, these provisions support Horseshoe's argument, analyzed supra, that the legislature used the phrase "other legal entity" in the definition of "person" in the riverboat act as a "catch-all" to refer to other entities, similar to partnerships, corporations, or unincorporated associations, that might come within the jurisdiction of the Commission and Division.

CONCLUSION
After thoroughly examining both well developed principles of state administrative law and the plain language of the Riverboat Gaming Act, we conclude the legislature did not intend to give the Division the right to appeal decisions of the Commission. As such, we decline to do so in the absence of a clear expression of legislative intent in that regard. Because our decision on the threshold issue of the Division's right to appeal is dispositive of this case, we need not address the issues of whether: (1) the Division, by complying with the Commission's order to issue a license to Horseshoe, waived the right to challenge that order, and (2) whether the Department of Public Safety can sue on the state's behalf without the participation of the Attorney General.
Accordingly, the judgment of the court of appeal, reversing the trial court judgment which had dismissed the Division's suit on the basis of no right of action, is hereby reversed, and we reinstate the trial court judgment on that issue. Because our decision in this case renders moot the res judicata issue, we vacate the court of appeal judgment reversing the exception of res judicata. Furthermore, the court of appeal judgments, remanding this matter to the trial court, are also hereby vacated.
JUDGMENT OF THE COURT OF APPEAL REVERSED, IN PART, AND VACATED, IN PART.
NOTES
[*] Calogero, C.J., not on panel. Rule IV, § 3. Lindsay, J., Louisiana Court of Appeal, Second Circuit, sitting by designation in place of Justice James L. Dennis.
[1] The conditions were as follows: (1) Horseshoe would operate under a plan of security and internal fiscal financial controls for six months with the Division having the right to make any changes it deemed reasonably necessary; (2) Horseshoe would carry out a "mock cruise" or "run of operations" designed to allow the Division the opportunity to observe all operations and proposed gaming activities and make any changes the Division deemed reasonably necessary; (3) the Division would be permitted to approve the "slot and count configuration" on the vessel; (4) the vessel would receive U.S. Coast Guard approval without any restrictions or other stipulations attached to such approval; (5) Horseshoe would remit the $50,000.00 licensing fee within ten days of the date of the Commission's January 29, 1994 hearing; (6) all Horseshoe employees would undergo special training with respect to financial reporting requirements; and (7) Horseshoe would secure a permanent full-time auditor to conduct monthly audits.
[2] Because the only issue we need to address in this opinion is the procedural issue of whether the Division has the right to appeal decisions of the Commission, we express no opinion on the merits of the Commission's decision to reverse the Division and issue Horseshoe a license.
[3] While La.R.S. 4:548 states, in part, that a "person adversely affected by an action, order, or decision of the commission may `appeal' to the Nineteenth Judicial District Court," this right of "appeal" is not an "appeal" as contemplated by the Code of Civil Procedure. La.C.C.P. art. 2082 defines "appeal" as "the exercise of the right of a party to have a judgment of a trial court revised, modified, set aside, or reversed by an appellate court." See also Bowen v. Doyal, 259 La. 839, 253 So.2d 200 (1971).
[4] After we granted certiorari in this case, Mr. Bankston filed a motion requesting that his appeal, No. 94-1913, be dismissed with prejudice. This court granted his motion, thereby rendering moot the issue of whether he had the right to appeal the Commission's decision.
[5] This exception has been codified in the Louisiana APA which includes "political subdivisions" in the definition of "person" in La.R.S. 49:951.
[6] Wyoming was one of the majority of U.S. states to enact the Model State Administrative Procedure Act of 1961. See W.S.1977, §§ 16-3-101 to 16-3-115.
[7] Since the 1981 revision, several states have included agencies within their definition of "person." See, for example, Wisconsin Statutes Annotated § 227.01 (West 1994). Moreover, while not amending "person," the Hawaii Legislature amended the Hawaii APA to permit agencies to appeal adverse decisions of adjudicatory agencies. See HRS § 91-14(a) (compilation 1993).
[8] See note 7, supra.
[9] See La.R.S. 12:1301 et seq.
[10] The legislature is presumed to have acted with deliberation, knowledge of the effect of its acts, and with a purpose in view, and that the provisions of an act were formulated in harmony therewith. Miles v. Apex Marine Corp., 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990); New Orleans v. Bd. of Supervisors, 216 La. 116, 43 So.2d 237 (1949); Abbeville v. Police Jury, 207 La. 779, 22 So.2d 62 (1945); State v. Shushan, 206 La. 415, 19 So.2d 185 (1944); Stoker v. Police Jury, 190 So. 192 (La.App.1939).
[11] The Division argues the legislature intended to give it the right to appeal Commission decisions by providing in La.R.S. 4:556, which pertains to the right of the Commission and Division to bring an action for declaratory judgment, that "when an appeal is brought by a person other than the division, the division shall be made a party to the action." The Division's argument on this point is that by using the language, "a person other than the division," the legislature intended to include the Division within its definition of person, and the Division can be a "person adversely affected by an action, order, or decision of the commission" and can therefore appeal Commission decisions. Granted, the language in R.S. 4:556 creates some ambiguity as to the definition of "person." However, it cannot be said that R.S. 4:556 constitutes an express grant of the right to appeal, or that the legislature even intended to classify the Division as a "person." Rather, in light of the general rule, discussed infra, that agency appeals are not allowed in the absence of a clear legislative expression in that regard, this provision is insufficient to support the contention that the legislature intended to give the Division the right to appeal Commission decisions. The better view is that this provision, located in the section of the Act dealing with declaratory judgments, seems to apply to appeals of an action for declaratory judgment and not to appeals of decisions of the Commission.

Similarly, citing La.R.S. 4:517 B(4), which provides that the Division may initiate actions for violations of the Riverboat Gaming Act or of rules of the commission or division, the Division argues the legislature intended to give it the right to appeal decisions of the Commission. A plain reading of R.S. 4:517 B(4), however, reveals that while the Division has the power to initiate actions for violations of its rules or the rules of the Commission, and can "defend" appeals of those decisions, the legislature did not expressly give the Division the power to "initiate" appeals of decisions of the Commission, and as such, this provision also fails to give the Division the power to appeal Commission decisions.