Dear Mr. Manning
You have requested an opinion of the Attorney General in your capacity as General Counsel to the Department of Economic Development (DED), regarding the authority, vel non, of a municipality to sell unimproved immovable property to a private corporation for industrial inducement purposes.
You specifically state that DED has been working in cooperation with the City of Monroe (City) in recruiting a national mortgage company (the "Company") to locate a record retention facility in the City. The City owns some unimproved immovable property in an industrial park that it would like to sell to the Company, and the Company would like to purchase this property and build its own facility.
In answer to your question, we refer you to Article VI, Section21 of the 1974 Louisiana Constitution (the "Constitution"). It provides, in pertinent part, the following:
§ 21. Assistance to Local Industry
 (A) Authorization. In order to (1) induce and encourage the location of or addition to industrial enterprises therein which would have economic impact upon the area and thereby the state, (2) provide for the establishment and furnishing of such industrial plant, or (3) provide movable or immovable property, or both, for pollution control facilities, the legislature by law may authorize, subject to restrictions it may impose, any political subdivision, . . . to:
 (a) issue bonds, subject to approval by the State Bond Commission or its successor, and use the funds derived from the sale of the bonds to acquire and improve industrial plant sites and other property necessary to the purposes thereof;
 (b) acquire, through purchase, donation, exchange, and (subject to Article I, Section 4) expropriation, and improve industrial plant buildings and industrial plant equipment, machinery, furnishings, and appurtenances; and
 (c) sell, lease, lease-purchase, or demolish all or any part of the foregoing."
Acting upon this constitutional authority, the legislature has enacted various economic and/or industrial development programs, including those found at R.S. 33:130.52, 4717.1, 4717.2, 9020, etseq., 51:1151, et seq. and 1201. We specifically draw your attention to R.S. 33:4717.2 which provides, in pertinent part, the following:
 ". . . any . . . municipality . . . shall have the authority to sell, lease, or otherwise dispose of, by suitable and appropriate contract. . . to any enterprise locating or existing within, outside of, or adjoining to such political subdivision, all or any part of any industrial plant site, building or other property owned by the political subdivision. In determining the consideration for any transfer, the governing authority of the political subdivision may consider the potential value of the economic impact of the enterprise being induced to locate or expand within, outside of, or adjoining the political subdivision, as well as the value of the lands, buildings, or other properties involved." [Emphasis added.]
R.S. 33:9020, et seq. comprise the "Cooperative Economic Development Law". Section 9021 expresses the legislative finding and declaration of necessity that local governmental subdivisions (e.g., municipalities) engage in cooperative endeavors with each other and with other public or private associations and/or corporations for the purpose of economic development to alleviate conditions of economic distress. To accomplish this result, § 9023 authorizes municipalities to create non-profit economic development corporations and, once created, to engage in cooperative endeavors.
Section 9023 (C) enumerates the powers and authority of economic development corporations as follows:
 "(C) The corporation is hereby authorized and shall have all the authority and power necessary in order to carry out and effectuate the purposes and provisions of this Chapter, including without limiting the generality of the foregoing, the following specific powers which shall be in addition to others herein granted:
* * *
 (3) To acquire by purchase, lease, option, gift, grant, bequest, device, any property, real or personal, or any interest therein, which it may deem necessary to carry out the purpose and provisions of this Chapter.
 (4) To sell, convey, mortgage, lease, transfer, donate, option, exchange or otherwise dispose of any property, either real or personal, or any interest therein, as the objects and purposes of the corporation may require to carry out the provisions of this chapter, subject to such limitations as may be prescribed by law." [Emphasis added.]
Section 9029 provides for the disposition of real property as follows:
 "Any corporation may sell . . . or otherwise transfer real property or any interest therein acquired by it in economic development areas for residential, recreational, commercial, industrial or other uses or for public use in accordance with its economic development plan, subject to such covenants, conditions, and restrictions . . . as it may deem to be necessary or desirable to carry out the purposes of this Chapter . . . . Such real property or interest shall be sold . . . or otherwise transferred at not less than its fair value for uses in accordance with the economic development plan . . . . Real property acquired in accordance with the provisions of the economic development plan shall be transferred as rapidly and as feasible in the public interest consistent with the carrying out of the provisions of the plan." [Emphasis added.]
Finally, § 9034.3 specifically vests the City with the authority to carry out the purposes set forth hereinabove:
 "A local governmental subdivision in Ouachita Parish only may, by resolution or ordinance, propose to carry out the purposes of this Chapter without the necessity of creating and organizing an economic development corporation. Any local governmental subdivision which proposes to carry out the purposes of this Chapter in such a manner shall have all of the powers rights, duties, and obligations of such a corporation
under this Chapter and may do any act or take any action which such a corporation is authorized to do under this Chapter, including without limitation, entering into a joint venture or cooperative endeavor for a public purpose with a federal, state, or local governmental agency or with a private or public firm, partnership, corporation or other entity." [Emphasis added.]
Finally, we draw your attention to R.S. 39:991, which provides, with respect to municipalities, the following:
 "In addition to any other authority conferred by the constitution and statutes of the state of Louisiana, any municipal corporation . . . may, in order to encourage the location of or addition to industrial enterprises therein or adjoining thereto, issue revenue bonds and use the funds derived from the sale of such bonds to acquire, purchase, lease, rent, construct, or improve industrial plant sites and industrial plant buildings . . . and may sell . . . by suitable and appropriate contract, to any enterprise locating or existing within or adjoining such municipality, such sites, buildings and/or facilities, and appurtenances thereto, all or severally." [Emphasis added.]
As can be gleaned from the above statutory provisions, it was clearly the intent of the legislature that political subdivisions, such as the City, have the inherent authority to sell property, both real and personal, to a private corporation for economic and/or industrial development and inducement. This office has consistently recognized this authority as evidenced in Opinion Nos. 78-1381, 79-1197, 79-1197 (A), 80-883, 81-232, 93-754 and 95-141.
You have further requested that we examine Article VI, Section 21, quoted supra, and opine as to any inconsistencies it may present with the City's statutory authority to sell unimproved real property. As previously noted, § 21 provides for the enactment of laws for the inducement of new industry and the construction of new industrial plants. To facilitate these purposes it authorizes the legislature, subject to any limitation it may impose, to: (1) use funds derived from the sale of bonds to acquire and improve industrial plant sites; (2) acquire and improve industrial plant buildings and equipment; and (3) sell, lease, lease-purchase, or demolish all or any part of the foregoing.
Initially, we note the following rules of constitutional and statutory construction to be pertinent to the issue before us:
Constitutional provisions are to be construed and interpreted by the same rules as are other laws. PG Retailers, Inc. v. Wright,590 So.2d 1272 (La.App. 1st Cir. 1991), rehearing denied; Cityof New Orleans v. Scramuzza, 507 So.2d 215 (La. 1987); andFirefighters' Retirement System v. Landrieu, 572 So.2d 1175
(La.App. 1st Cir. 1990), writ denied.
Every constitutional and statutory provision must be interpreted in light of the purpose of the provision and the public policy interest it furthers. Breaux v. Hoffpauir, 674 So.2d 234 (La. 1996), rehearing denied; Radiofone, Inc. v. City of New Orleans,630 So.2d 694 (La. 1994); and State v. Farris, 667 So.2d 337
(La.App. 1st Cir. 1995).
The Constitution's provisions are not grants of power but instead are limitations on an otherwise plenary power of the people of the State exercised through its legislature. Thus, the legislature may enact any legislation that the Constitution does not prohibit and in order to hold that legislation invalid under the Constitution, it is necessary to rely upon some particular constitutional provision that limits the power of the legislature to enact such a statute. Board of Commissioners of the NorthLafourche Conservation, Levee and Drainage District v. Board ofCommissioners of Atchafalaya Basin Levee District, 666 So.2d 636
(La. 1996), rehearing denied.
All legislation enacted by the legislature is considered constitutional until declared otherwise in proceedings brought contradictorily between interested persons. Thus, constitutional and legislative enactments are presumed to be valid and to have meaning. American Waste and Pollution Control Company v. St.Martin Parish Police Jury, 627 So.2d 158 (La. 1993), rehearing denied.
The legislature has a right to interpret the Constitution.Johnson v. Sewerage District No. 2 of Caddo Parish, 239 La. 840,120 So.2d 262 (1960).
Laws are presumed to be passed with the deliberation and full knowledge of all existing laws and constitutional provisions regarding the same subject matter. State v. Louisiana RiverboatGaming Commission and Horseshoe Entertainment, 655 So.2d 292
(La. 1995), and Lieber v. Caddo Levee District Board ofCommissioners, 660 So.2d 188 (La.App. 2nd Cir. 1995), writ denied.
Proceedings in the State's 1974 Constitutional Convention (the "Convention") are valuable aids, and should be given some weight in determining the purpose, intent and consequent meaning of the constitutional provision, in question. New Orleans FirefightersAssociation v. Civil Service Commission of the City of NewOrleans, 422 So.2d 402 (La. 1982), rehearing denied.
The primary public purpose and interest furthered by Article VI, Section 21 is to induce and encourage the location of new industry within political subdivisions of the State. It is clear that § 21 (A)(3)(a) and (c) empower the legislature to authorize, by law, the sale of publically owned immovable property acquired with funds derived from the sale of bonds to private enterprise. A review of the Convention, Verbatim Transcripts, supports this conclusion:
 "Mr. Cannon: . . . behind (c) you notice the former language said: `to sell, lease or otherwise dispose of, all or any part of the foregoing,' talking about the property. Well, this would allow them to give it away. We're thinking that . . . it was our thinking that this was possibly unwise to leave it in here and to add the words `lease-purchase, or demolish' . . . to improve this industrial property it may be necessary to demolish at some time. The Port of Lake Charles uses lease-purchase agreements so that, ultimately, there will be . . . the land and its improvements will revert to private ownership rather than remain in public ownership." [Emphasis added.] [58th Days Proceedings — October 2nd, 1973 at pg. 1531]
Regarding the City's authority to convey unimproved immovable property which was not purchased with proceeds derived from the sale of bonds, a review of the Constitution reveals no prohibition against this transaction. As noted hereinabove, the legislature has enacted several laws, most notably R.S.33:4717.2, which specifically vests in local government the power to sell both movable and immovable property to private corporations. This legislation was passed subsequent to the effective date of Article VI, Section 21, and clearly furthers the public policy behind its enactment.
Based upon the presumption that Section 4717.2 was passed with deliberation and full knowledge of all existing laws and constitutional provisions on the same subject, and that said section must be considered constitutional until declared otherwise by our Courts, it is the opinion of this office that the City may, for reasons of industrial inducement, sell unimproved immovable property to a private corporation. In doing so, the City must comply with the procedures set forth in Section 4717.2, as well as any additional statutory and constitutional provisions relevant to the transaction.
Trusting this adequately responds to your inquiries, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ROBERT E. HARROUN, III
Assistant Attorney General RPI/Rob III/cla